COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

§

IN RE:  CHEVRON U.S.A., INC.              §              No. 08-08-00084-CV

§              AN ORIGINAL PROCEEDING

§

Relator.                                  §              IN MANDAMUS

§

§

**OPINION ON PETITION FOR WRIT OF MANDAMUS**

Chevron U.S.A.,Inc. (CUSA), seeks a writ of mandamus against the Honorable Bob Parks, Judge of the 143rd District Court of Reeves County, Texas, to compel him to confirm two arbitration awards.  CUSA has also filed notice of appeal from an order which it contends effectively denies its motion to confirm the arbitration awards.  We conditionally grant mandamus relief and dismiss the interlocutory appeal for want of jurisdiction.

**FACTUAL SUMMARY**

This appeal and mandamus proceeding arise out of the Relators' motion to confirm certain arbitration awards and the Real Parties in Interest's motion to vacate those awards.  The Real Parties in Interest are the co-trustees of the Texas Pacific Land Trust, James K. Norwood, Maurice Meyer, III, and John R. Norris (collectively referred to as TPLT).  TPLT filed a suit against CUSA for damages related to TPLT's non-participating royalty interests.

In the late 1800's, TPLT was given several million surface acres by the Texas Legislature in exchange for constructing the Trans-Texas Railroad.  In 1954, TPLT obtained a declaratory judgment in a Texas district court authorizing it to create a subsidiary company, TXL Oil

Corporation, for the purpose of conveying to that company all of TPLT's mineral interests. On December 10, 1954, TPLT conveyed to TXL all of its mineral interests underlying its 2 million surface acres. Under this conveyance, TXL reserved all of its surface acres as well as a non-participating royalty interest in those lands under an oil and gas lease to third parties. In 1962, TXL sold all of the mineral interests to Texaco, Inc., and Texaco, Inc. conveyed these mineral interests to Texaco Exploration and Production, Inc. (TEPI) in 1991. Texaco, Inc. and/or TEPI owned and operated the mineral interests until 2002 when they were acquired by Chevron U.S.A. in the merger between Chevron Corporation and Texaco, Inc.

The 1954 conveyance contains an arbitration clause which provides:

All claims, demands, disputes, differences and controversies between Assignors and Assignee arising out of or concerning the terms and provisions of this instrument or the rights, duties and obligations of the parties hereto shall be submitted to and be determined and settled by arbitration in the following manner: Assignors and Assignee shall each select an arbitrator within 10 days after demand for arbitration has been given by one party to the other. The two arbitrators shall select a third arbitrator within 10 days thereafter and the three so appointed shall constitute the board of arbitrators. Said board of arbitrators shall meet and shall give opportunity to each party hereto to present his case and witnesses, if any, in the presence of the other, and shall then make its award in writing. The award of a majority of the arbitrators shall be binding upon the parties hereto and judgment may be entered thereon in any court having jurisdiction. Such award shall include the fixing of the expense of the arbitration and assessment of the same against either or both parties.

On March 12, 2004, TPLT and CUSA agreed to add certain claims made by TPLT against CUSA to an ongoing arbitration. The added claims included those which pertained to the following properties:

Glasscock "L" Calverly (Glasscock County)

Midland "AW" Fee Well No. 1/TXL "N" 5-1 Well (Midland County)

Glasscock "P" Fee (Glasscock County)

Over the course of the next four years, the parties proceeded to arbitrate TPLT's claims

against CUSA before an arbitration panel comprised of the Honorable James R. Meyers (a retired district judge), Laura Burney (an attorney and oil and gas professor), and Elizabeth Miller (an oil and gas trial attorney). Between November 8, 2005 and November 27, 2007, the arbitration panel issued ten arbitration orders. Order Nos. 1 through 8 were issued prior to the evidentiary hearing which took place on May 14, 2007 through May 24, 2007. This mandamus proceeding concerns two of those orders: Arbitration Order No. 4 issued on August 30, 2006 and Arbitration Order No. 9 issued on July 9, 2007.

In Arbitration Order No. 4, the arbitration panel addressed two motions for summary judgment and a request for declaratory judgment filed by CUSA. Among other things, the arbitration panel determined that the 1954 conveyance created duties requiring TXL and its successors to develop and protect TPLT's non-participating royalty interests, but it found that the duties did not rise to the level of fiduciary duties. The arbitration panel also declared in this order that the four year statute of limitations applied to TPLT's claims for breach of the duty to develop and protect TPLT's non-participating royalty interests such that TPLT's claims were limited to those occurring in the four-year-period prior to the filing of the suit.

Arbitration Order No. 9 relates to several properties, including the Glasscock "L" Calverly, Midland "AW" Fee Well No. 1/TXL "N" 5-1 Well, and Glasscock "P" Fee. In this order, the arbitration panel reiterated its earlier ruling that the 1954 conveyance imposed on TXL and its predecessors the duty to protect and develop the acreage burdened by TPLT's non-participating royalty interests as a reasonably prudent operator would under the same or similar circumstances. The panel also held that the 1954 conveyance did not create a separate duty of utmost good faith and fair dealing, a duty to "equally develop" the burdened and unburdened acreage, or a duty to pay compensatory royalty.

With respect to the Glasscock "L" Calverly property, the panel stated TPLT had made a claim for bad faith pooling. TPLT argued that no unit should have been formed for the "L " Fee Calverly Unit Well No. 1 and the well should have instead been drilled further south or a Rule 37 permit should have been obtained for the well at its actual location. The panel noted that TPLT had not presented any evidence as to what would have been required to obtain a Rule 37 exception or whether the Railroad Commission would have approved such an application. After considering the evidence, the panel concluded that the evidence did not establish that the pooling was done in bad faith and TPLT had failed to establish that a reasonably prudent operator would not have formed the unit. The panel additionally found that such a claim was barred by the statute of limitations because the unit had been formed in 1993 and TPLT had been accepting royalty payments on a unitized basis since that time.

With regard to the Midland "AW" Fee, the panel characterized it as a failure to develop claim based on an allegation that a reasonably prudent operator would have drilled at the proposed location. The panel stated the applicable rule is that a reasonably prudent operator is not required to drill a development well in the absence of a reasonable expectation of profit. It found that the estimates of production from the proposed location are too speculative for the panel to conclude that a reasonably prudent operator would have drilled a well at that location, and therefore, TPLT failed to meet its burden of proof.

The panel also addressed the Glasscock "P" Fee in this order. It noted that TPLT framed the issue as a failure to pool or "equally develop" but the panel held that it is a failure to protect claim. The panel found against TPLT on this claim because it failed to prove substantial drainage which is an element of the claim.

On October 17 , 2007, CUSA filed an application in the district court to confirm the

arbitration awards and the court set it for hearing on December 14, 2007.[1] In that application, CUSA relied on the arbitration agreement dated March 12, 2004. On November 7, 2007, TPLT responded with a motion to vacate the arbitration awards alleging "evident partiality" on the part of Miller. The arbitration panel, with Miller not participating, entered Arbitration Order No. 10 on November 27, 2007 severing "[t]he properties addressed in Arbitration Orders 4, 8, and 9 . . . from the remaining properties." The arbitration panel's order also severed the issue of attorney's fees which had not been addressed.

On or about November 30, 2007, TPLT filed a request for production of documents from Miller's law firm. CUSA responded by filing a motion to quash/motion for protective order asserting that TPLT's motion to vacate the arbitration awards was untimely because it was filed more than three months after the issuance of Arbitration Order No. 9. TPLT sought to continue the hearing on CUSA's motion to confirm so it could conduct discovery on Miller's law firm. The trial court conducted the hearing scheduled for December 14, 2007 and entered an order on January 8, 2008 granting the motion for continuance. The court also denied the motion to quash and for protective order.

Alleging that the trial court effectively denied its motion to confirm the arbitration awards, CUSA filed a petition seeking mandamus relief. At the same time, CUSA filed notice of appeal. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 171.098(a)(3)(Vernon 2005). We consolidated the mandamus proceeding and the interlocutory appeal for purposes of briefing, oral argument, and decision. *See In re Valero Energy Corporation*, 968 S.W.2d 916, 916-17 (Tex. 1998)(instructing that when a court of appeals is confronted with an interlocutory appeal and a mandamus proceeding

---

[1] The application to confirm the arbitration awards was filed in the 143rd District Court of Reeves County, Texas in cause number 07-10-18936-CVR. The proceeding is styled *Chevron U.S.A., Inc. v. James K. Norwood, Maurice Meyer, III, and John R. Norris, III, Co-Trustees of Texas Pacific Land Trust.*

seeking to compel arbitration would be to consolidate the two proceedings and render a decision disposing of both simultaneously, thereby conserving judicial resources and the resources of the parties).

## INTERLOCUTORY APPELLATE REVIEW IS UNAVAILABLE

As a preliminary matter, we must determine whether the trial court's rulings are reviewable in an interlocutory appeal under the Texas General Arbitration Act (TGAA). If they are not, mandamus review is available provided CUSA meets the well established mandamus standard. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 345 (Tex. 2008)(orig. proceeding). The Federal Arbitration Act (FAA) permits a party to appeal from an order confirming or denying confirmation of an arbitration award. 9 U.S.C.A. § 16(a)(1)(D)(West 2009). But federal procedure does not apply in Texas courts, even when Texas courts apply the FAA. *See Jack B. Anglin Company v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). Consequently, appellate review is unavailable to CUSA under the FAA. Section 171.098(a)(3) of the TGAA authorizes an appeal from an order confirming or denying confirmation of an arbitral award. TEX.CIV.PRAC.&REM.CODE ANN. § 171.098(a)(3). Because the original arbitration agreement was entered prior to January 1, 1966, the TGAA is inapplicable to it. TEX.CIV.PRAC.&REM.CODE ANN. § 171.002(a)(5)(TGAA does not apply to arbitration agreements made before January 1, 1966). This case, however, is not based on the 1954 arbitration agreement but is instead based on arbitration agreement made by the parties on March 12, 2004. The TGAA does not authorize an interlocutory appeal from orders granting a continuance or permitting discovery. *See Universal Computer Systems, Inc. v. Dealer Solutions, L.L.C.*, No. 01-02-00219-CV, 2002 WL 31030747 (Tex.App.--Houston [1st Dist.] 2002, no pet.)(interlocutory order granting plaintiffs' motion to compel arbitration in part and denying it in part, but delaying entry until resolution of discovery issues and ruling on objections to special master's decision, was not

appealable; reading the order as a whole, the appellate court determined that the court was not denying the motion to compel arbitration, but merely delaying the granting of it until certain conditions had occurred). Because there is no basis for appellate jurisdiction under either the TGAA or the FAA, we have dismissed the interlocutory appeal for want of jurisdiction in a separate opinion and judgment issued this same date.[2]

## THE ISSUES

Alleging that Arbitration Orders Nos. 4 and 9 are final for purposes of confirmation and that TPLT failed to timely file its motion to vacate, CUSA asserts that the trial court abused its discretion by failing to summarily confirm the confirmation awards. TPLT contends that Arbitration Orders Nos. 4 and 9 did not become final until the arbitration panel entered the severance order, and therefore, it timely filed the motion to vacate on the ground of evident partiality.

---

[2] *Chevron U.S.A., Inc. v. James K. Norwood, Maurice Meyer, III, and John R. Norris, III, Co-Trustees of Texas Pacific Land Trust*, No. 08-08-00068-CV (Tex.App.--El Paso Jan. 27, 2010).

## STANDARD OF REVIEW

To be entitled to mandamus relief, a relator must meet two requirements. First, the relator must show that the trial court clearly abused its discretion. *In re Prudential Insurance Company of America*, 148 S.W.3d 124, 135 (Tex. 2004). Second, the relator must demonstrate it has no adequate remedy by appeal. *Id.* at 136.

## PREEMPTION BY THE FAA

Generally speaking, the FAA and the TGAA are not mutually exclusive. *See In re D. Wilson Construction Company*, 196 S.W.3d 774, 779 (Tex. 2006). The FAA does not preempt consonant state law, only contrary state law. *Id.* Preemption occurs where application of state law would undermine the goals and policies of the FAA. *Id.* The Texas Supreme Court has articulated a four-factor test to determine whether the FAA preempts the TGAA in a particular case: (1) the agreement is in writing; (2) it involves interstate commerce; (3) it can withstand scrutiny under traditional contract defenses under state law; and (4) state law affects the enforceability of the agreement. *Id.* at 780; *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005)(per curiam). The mere fact that a contract affects interstate commerce, thus triggering the FAA, does not preclude enforcement under the TGAA as well. *In re D. Wilson Construction*, 196 S.W.3d at 780. For the FAA to preempt the TGAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TGAA has expressly exempted the agreement from coverage or (2) the TGAA has imposed an enforceability requirement not found in the FAA. *Id.* In the instant case, the TGAA has expressly exempted the arbitration agreement from its coverage because the agreement was made before January 1, 1966. TEX.CIV.PRAC.&REM.CODE ANN. § 171.002(a)(5).

**DOES THE FEDERAL ARBITRATION ACT APPLY?**

CUSA maintains that the FAA and cases interpreting its provisions apply in this case to determine whether the three arbitration orders are final for purposes of confirming and vacating the award. If the three orders are not final, the district court did not have jurisdiction to either confirm or vacate the award. TPLT urges that because this case is in state court, the FAA does not govern the procedures of confirmation and vacation.

We will first consider whether the FAA applies to this arbitration generally. The FAA applies to all suits in state and federal court when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Company v. Tipps*, 842 S.W.2d at 270, *quoting Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). Under the FAA, "commerce" means commerce among the states. 9 U.S.C.A. § 1. Its application is not limited solely to interstate shipment of goods. *Jack B. Anglin Company v. Tipps*, 842 S.W.2d at 270, *citing Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7, 87 S.Ct. 1801, 1805 n.7, 18 L.Ed.2d 1270 (1967). In its response to CUSA's mandamus petition, TPLT refuses to concede that the FAA is applicable to the arbitration agreement between the parties, noting "that is a complex issue beyond the scope of this proceeding." TPLT did not contest the FAA's applicability in the trial court. In fact, TPLT expressly relied on 9 U.S.C.A. § 10(a)(2) in its motion to vacate the arbitration orders on the ground of evident partiality.[3] In its response to CUSA's motion to quash the request for production of documents from a non-party (Miller's law firm), TPLT stated that the case is governed by the Federal Arbitration Act. Similarly, TPLT's counsel stated in open court during the December 14, 2007 hearing that "the standard of evident partiality is set forth in the federal statute, and that

---

[3] 9 U.S.C.A. § 10(a)(2) provides that the "United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C.A. § 10(a)(2).

federal statute governs this arbitration and the conduct of the arbitrators . . . ." Having sought relief pursuant to the FAA and having advised the trial court that the FAA governs the case, TPLT should not be heard to contest the applicability of the FAA.

When there is no express agreement to arbitrate under the FAA, a party may establish the applicability of the FAA by showing that the transaction affects or involves interstate commerce. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d at 269-70; *Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 511 (Tex.App.--San Antonio 2004, orig. proceeding). Commerce under the federal act is broadly construed and the amount of commerce considered in the contract need not be substantial. *Eye Ten Oaks*, 147 S.W.3d at 511. As long as a contract relates to interstate commerce, the FAA is implicated. *Id.*

By virtue of the agreement to arbitrate entered into on March 12, 2004, the parties agreed to add certain claims to the existing arbitration being conducted pursuant to the arbitration clause in the 1954 conveyance. The claims being added are related to oil and gas interests and are similar to the claims already being arbitrated by the parties. It is a matter of common knowledge that the oil industry involves interstate commerce. We conclude that the FAA governs enforcement of the arbitration agreement at issue in this case.

## CONFIRMATION AND VACATION OF ARBITRAL AWARD

Section 9 of the FAA provides that if the parties have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and specifies the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award. 9 U.S.C.A. § 9. The court must confirm the award unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of the FAA. *Id.* A party seeking to vacate an award because of alleged "evident partiality" by a neutral arbitrator

must file a motion to vacate with the trial court "within three months after the award is filed or delivered." 9 U.S.C.A. § 12. The three month period is considered to be a limitations period. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2nd Cir. 1984); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 853-54 (11th Cir. 1989)(noting that several other circuits treated the three month period as a limitations period). If a party does not file a motion to vacate the award in that time period, the trial court is required to grant an order confirming the award. 9 U.S.C.A. §§ 9 and 12. If CUSA is correct that the arbitration orders became final no later than July 9, 2007, TPLT did not timely file its motion to vacate and the trial court lacked discretion to delay ruling on the motion to confirm.

### ARE THE ARBITRATION ORDERS FINAL?

TPLT contends that determination of whether the arbitration orders are final should be made by looking at Texas law. "Procedural matters relating to the confirmation of arbitration awards in Texas courts are governed by Texas law even if the FAA supplies the substantive rules of decision." *Garza/Phelps Dodge Refining Corp. v. Phelps Dodge Refining Corp./Garza*, 262 S.W.3d 514, 519 (Tex.App.--El Paso 2008, no pet.), *quoting Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 804 (Tex.App.--Dallas 2008, pet. denied); *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992)("federal procedure does not apply in Texas courts, even when Texas courts apply the Federal Act"); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774 (Tex. 2006)(FAA only preempts state statutes to the extent that they are inconsistent with FAA); *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 260 n.3 (Tex.App.--Houston [1st Dist.] 2005, pet. denied), *cert. denied*, 549 U.S. 888, 127 S.Ct. 297, 166 L.Ed.2d 154 (2006). We have determined, however, that the TGAA does not apply in this case. Further, the finality of the arbitration orders is a matter of substantive law. Accordingly, we will apply federal law in determining whether the arbitration orders are final

for purposes of confirmation and vacation.

In the arbitration agreement, the parties agreed that the arbitration award would be final and subject to confirmation by a court: "The award of a majority of the arbitrators shall be binding upon the parties hereto and judgment may be entered thereon in any court having jurisdiction." The FAA requires that the arbitration award be "mutual, final, and definite" as a prerequisite to confirmation. *See* 9 U.S.C.A. § 10(a)(4)(an award may be vacated if it is not mutual, final, and definite). An arbitral award is generally deemed final when it evidences the arbitrators' intention to resolve all claims submitted for arbitration. *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413 (2nd Cir. 1980). A court has no authority to review an award lacking the requisite degree of finality. *Michaels*, 624 F.2d at 414.

Federal courts have recognized exceptions to the finality requirement. One exception exists when the issues of liability and damages are bifurcated in the arbitration proceeding. *See e.g., Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 236 (1st Cir. 2001)(where arbitration is bifurcated into liability and damages phases, the arbitral award with respect to liability is a final award under the FAA; the First Circuit limited its holding to cases in which the parties had formally agreed to bifurcate the arbitration); *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16 (1st Cir. 2001)(extending *Hart Surgical* to informal bifurcation agreement). Another exception to the finality requirement has been found when the arbitration panel orders interim security or temporary equitable relief. *See e.g., Yasuda Fire & Marine Insurance Company of Eur. v. Cont'l Casualty Co.*, 37 F.3d 345, 348 (7th Cir. 1994)(arbitral "interim order of security" found to be a final award because the order was necessary to prevent the final award from becoming meaningless); *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991) (arbitral "interim final order" providing temporary equitable relief necessary to make potential final

award meaningful found to be final and subject to confirmation). A third exception exists when the interim award finally disposes of a separate and independent claim. *See e.g., Zeiler v. Deitsch*, 500 F.3d 157, 168 (2nd Cir. 2007)(eight interim orders issued by arbitration panel were resolution of separate and independent claim and subject to confirmation even though the orders did not dispose of all claims submitted to arbitration); *The Home Insurance Company v. RHA/Pennsylvania Nursing Homes, Inc.*, 127 F.Supp.2d 482, 490 (S.D. N.Y. 2001)(an interim award which adjudicated a portion of a damages claim and ordered the payment of that sum is final even though liability and potential damages issues remained to be resolved with respect to the remainder of the same claim; court held that an arbitration award that fully disposes of a separate and independent claim is final for purposes of confirmation under the FAA even if other claims remain pending); *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231 (1st Cir. 2001)(holding that an award which finally and definitely disposes of a separate independent claim may be confirmed although it does not dispose of all the claims that were submitted to arbitration); *Publicis Communication v. True North Communications, Inc.*, 206 F.3d 725, 727 (7th Cir. 2000)(interim arbitration order was sufficiently final and subject to confirmation); *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2nd Cir. 1986)(noting that shipowner would have been entitled to summary judgment in a district court for the amount of unpaid freight, court found that interim award of damages for unpaid freight was final and subject to confirmation). Some courts have held that an interim award is final when it represents the final determination of a discrete issue, and is not subject to change or revision by the arbitrators. *Trade & Transport, Inc. v. Natural Petroleum Charterer, Inc.*, 931 F.2d 191, 195 (2nd Cir. 1991) (partial arbitral award that decided liability found to be a final award); *Island Creek Coal Sales Co. v. City of Gainesville, Fla.*, 729 F.2d 1046, 1049 (6th Cir. 1984)(arbitral "interim order" that finally and definitively disposed of separate, discrete, self-contained issue found to be final and subject to

confirmation), *overruled on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000).

Relying on the separate and independent or discrete claim doctrine articulated in the foregoing cases, CUSA maintains that Arbitration Orders 4, 8, and 9 are final because they finally dispose of each of TPLT's claims relating to each property which is the subject of those orders. CUSA argues that "whether CUSA diligently developed NPRI-burdened acreage in a particular county in a particular locale had nothing to do with whether it was a diligent operator at other times in other places in the context of completely different facts." It goes on to reason that the orders which deal with particular properties were sufficiently final for confirmation. We agree with CUSA that Arbitration Orders 4 and 9 disposed of discrete claims pertaining to separate units of property. The claims resolved by these orders are not dependent on the resolution of or related to the remaining claims, namely, the Section 1, Block 39 [Spraberry Trend] claim and the Section 31, Block 32 [Big Spring "Fusselman" Field] claim,[4] or the resolution of the attorney's fees claims and assessment of the costs of arbitration. Application of the separate and independent claim doctrine is particularly appropriate in this case because the parties presented the case to the arbitration panel on a property-by-property basis and the parties expressly requested that the arbitration panel render a partial decision on the properties submitted to the arbitration panel during the evidentiary hearing. The arbitration panel agreed to render a decision on the properties submitted to it during the evidentiary hearing. The request and ruling are reflected in the first paragraph of Arbitration Order No. 9:

> On May 14, 2007, the arbitration panel convened to hear evidence in the above styled arbitration. The panel was asked by the parties to render a partial decision on the properties submitted at that hearing and the panel accordingly does so in this order. This order does not address the properties not reached, nor does it address attorneys'

---

[4] At oral argument, appellate counsel for CUSA stated these claims were not part of the pending lawsuits but were submitted to arbitration by agreement of the parties.

fees nor costs of arbitration all of which are reserved. With respect to the properties submitted to it, the panel makes the following decision . . . .

Under these unique circumstances, we conclude that Arbitration Orders 4 and 9 are sufficiently final for purposes of confirmation and vacation. The three-month limitations period for filing a motion to vacate the awards began to run no later than July 9, 2007 when the arbitration panel entered Arbitration Order No. 9. *See* 9 U.S.C.A. §§ 10 and 12. Because TPLT filed its motion to vacate on November 7, 2007 after the expiration of the limitations period, the trial court had a ministerial duty to deny the motion to vacate and grant the motion to confirm. The court abused its discretion by failing to so rule and by continuing the hearing on the competing motions to confirm and vacate in order for discovery to be undertaken on the evident partiality issue. We conditionally grant CUSA's petition for writ of mandamus. The writ will not issue unless the trial court fails to act in accordance with this opinion.

January 27, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Ables, Judge (Ret.)
Ables, Judge (Ret.), sitting by assignment, not participating