**Affirmed in Part, Reversed in Part, Remanded with Instructions, and Opinion filed August 30, 2016.**



In the

# Fourteenth Court of Appeals

---

## NO. 14-15-00786-CV

---

## DARYL W. TURNER, IN PERSONAM, AND M/Y FOUR PLAY, IN REM, Appellants

## V.

## TEX//TOW MARINE TOWING AND SALVAGE, LLC D/B/A SEA TOW GALVESTON BAY, Appellee

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2014-73061**

---

### O P I N I O N

Daryl Turner and *M/Y Four Play*, *in rem*, appeal the trial court's order confirming a salvage arbitration award in favor of Sea Tow Galveston Bay. We affirm in part, reverse in part, and remand with instructions.

### Factual and Procedural Background

On June 22, 2013, appellant Daryl Turner was operating his boat, *Four Play*,

in the Galveston Bay. The boat struck a submerged object and began to sink. One of the passengers aboard the boat called William Kern, the owner of appellee Sea Tow Galveston Bay ("Sea Tow"), for help. Kern and his associate, Daniel Rowland towed the boat to safety. Rowland stated that he filled out the top half of a Sea Tow "Log and Job Invoice" and presented it to Turner for his signature. The top half of the invoice consisted of Turner's name and contact information, as well as information about Turner's boat. According to Sea Tow, Turner signed and dated the invoice below a paragraph of text entitled "Towing / Salvage Agreement." The agreement included the following sentence regarding dispute resolution:

> Any controversy or claim arising out of or relating to this agreement or the breach thereof shall be filed and/or removed (as the case may be) to Federal Court, or to compulsory, final and binding arbitration, or to a court of suitable jurisdiction, upon SALVOR's discretionary forum election, which shall be final and binding.

A copy of the invoice was filed with the trial court. The invoice shows Turner signed on a line labeled "Customer" and Kern signed on a line labeled "Sea Tow." The signatures appear immediately below the words "I have fully read, understand and agree to the terms and conditions as above written." Both signatures are dated June 22, 2013. The bottom portion of the invoice indicates that Sea Tow charged Turner $11,000 for salvage services after towing his boat. Turner refused to pay the charge.

Through its attorney, Sea Tow contacted Turner by email to notify him that if he continued to refuse payment, Sea Tow would demand arbitration. Turner continued to refuse payment. Sea Tow demanded arbitration and sent notice of the demand to Turner by both email and certified mail. Turner emailed one of Sea Tow's attorneys, saying that he would "gladly settle th[e] matter when a proper

2

amount [wa]s submitted" and that he had turned the matter over to his attorney, Daniel Crowder. Sea Tow's attorney contacted Crowder, who informed Sea Tow that he had not been formally retained by Turner.

Sea Tow proceeded with the arbitration, electing to use an arbitrator in Maine. The arbitrator emailed his arbitrator's disclosure and schedule for submissions to Turner and Sea Tow. Turner concedes that he received this correspondence from the arbitrator, but claims that he forwarded it to his assistant, who neglected to send it to Crowder. Sea Tow requested an extension of time from the arbitrator to submit its position and notified Turner of this request. The arbitrator granted Sea Tow's request and informed Turner that he would also be granted additional time to respond to Sea Tow's submission. When Turner did not respond, the arbitrator emailed Turner to remind Turner that if he did not submit his response, the arbitrator would close the proceeding and issue a final award in the matter. Turner did not respond, and the arbitrator emailed Turner and Sea Tow the next day to inform them that the proceeding was closed.

After the arbitrator had notified the parties that the proceeding was closed, Crowder sent a letter to the arbitrator indicating that he represented Turner and requesting that the arbitrator reopen the matter. The arbitrator refused the request and issued his final award to Sea Tow in the amount of $28,728.78 on February 18, 2014. After the award was issued, the parties attempted settlement but were unsuccessful in reaching an agreement.

Sea Tow filed its Petition to Confirm the Arbitration Award on December 18, 2015, in the 129th District Court of Harris County, Texas. Turner responded to the petition and moved to vacate the award on February 13, 2015. The trial court issued its final judgment against Turner, *in personam*, and *M/Y Four Play*, *in rem*, on June 15, 2015. Turner filed a motion for new trial. The record does not

3

indicate that this motion was ruled on by the trial court. Turner timely filed this appeal.

We affirm in part and reverse in part and hold: (1) the trial court did not err in confirming the arbitration award as to Turner, *in personam*, because Turner's motion to vacate was untimely; and (2) the trial court erred in asserting jurisdiction over and confirming the arbitration award as to Turner's boat, *M/Y Four Play*, *in rem*. We remand with instructions for the trial court to dismiss the claims against *M/Y Four Play*.

### Analysis

Turner and *M/Y Four Play*, *in rem*, present three issues on appeal: (1) whether the time limits in 9 U.S.C. § 12 apply to a non-participating party to arbitration who contests the existence of a written agreement to arbitrate; (2) whether a non-contractual and unauthenticated, incomplete, illegible acknowledgement ticket containing an imbedded arbitration clause constitutes a valid agreement to arbitrate; and (3) whether an arbitration award should be vacated because Turner did not receive a fair hearing.

### I. Turner

It is undisputed that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, governs this case. We review a trial court's decision to confirm an arbitration award *de novo*. *Broemer v. Houston Lawyer Referral Serv.*, 407 S.W.3d 477, 480 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Judicial review of an arbitration award "is extraordinarily narrow because of the limited grounds upon which an arbitration award may be vacated under the FAA."[1] *Venture Cotton Co-op. v.*

---

[1] A court may make an order vacating an arbitration award upon the application of any party to the arbitration:

(1) where the award was procured by corruption, fraud, or undue means;

4

*Neudorf*, No. 14-13-00808-CV, 2014 WL 4557765, at *2 (Tex. App.—Houston [14th Dist.] Sept. 16, 2014, no pet.) (mem. op.) (citing *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). "An arbitration award governed by the FAA must be confirmed unless it is vacated, modified, or corrected under certain limited grounds." *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 841 (Tex. App.—Houston [14th Dist.] 2011). Texas law "clearly favors arbitration" and an arbitration award "has the same effect as a judgment of a court of last resort; all reasonable presumptions are indulged in favor of the award." *Broemer*, 407 S.W.3d at 480.

The trial court did not err in confirming the arbitration award in favor of Sea Tow and against Turner because Turner's motion to vacate was untimely. Pursuant to section 12 of the FAA, notice of a motion to vacate "must be served upon the adverse party or his attorney within the three months after the award is delivered or filed." 9 U.S.C. § 12. Turner filed his motion to vacate nearly one year after the arbitrator issued the final award in this case and ten months after the record indicates that Turner's counsel acknowledged the award.[2] Turner contends

---

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

[2] The record contains an authenticated email, dated April 8, 2015, in which Crowder told counsel from Sea Tow that Turner contested "the merit of the default 'award.'"

5

that "the motion to vacate was timely . . . because it was brought within ninety (90) days of the filing of the so-called arbitration award, or December 18, 2014." Turner has not provided, nor have we found any case law supporting the proposition that the three-month statutory period commences at the time that a party seeks to enforce an arbitration award. Courts consistently have rejected similar arguments as contrary to plain meaning of the statutory text.[3] We join these courts in rejecting Turner's interpretation of section 12 and conclude that Turner's motion to vacate was untimely.

Turner alternatively argues that the limitations period prescribed by section 12 does not apply to him. Turner cites to *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998), for the proposition that the three-month period in section 12 does not apply when a party who, like Turner, did not participate in the arbitration proceeding challenges the validity of the award at the time of its enforcement on the basis that no written agreement to arbitrate existed between the parties. In *Exalon*, MCI filed a tariff regulation with the Federal Communications Commission that, by its terms, allowed arbitration of disputes between MCI and any party using its telecommunications services. *Id.* at 427. Exalon later entered into a contract with MCI for telecommunications services. *Id.* After Exalon contested a service bill, MCI invoked the arbitration

---

[3] *See, e.g., Broemer*, 407 S.W.3d at 481 (rejecting argument that three-month period began when arbitrator denied motion for reconsideration rather than when arbitrator issued award); *Smith v. J-Hite, Inc.*, 127 S.W.3d 837, 842 (Tex. App.—Eastland 2003, no pet.) (rejecting argument that statute of limitations does not apply if a motion to vacate is filed in opposition to motion for confirmation of award); *Eurocapital Grp., Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 430 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (motion to vacate untimely when filed ten months after award served on the parties); *see also Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*, 647 F.Supp.2d 587, 592 (D. Md. 2009) (rejecting argument that three-month period began after arbitrator granted a motion to correct and finding that period began when final arbitration award issued); *Romero v. Citibank USA, Nat. Ass'n*, 551 F.Supp.2d 1010, 1013 (E.D. Cal. 2008) (three-month period began when arbitration award was issued).

provision in the tariff that it filed with the FCC. *Id.* MCI proceeded with arbitration and received an award from the arbitrator. *Id.* at 428. Exalon did not participate in the arbitration, nor did it later move to vacate, correct, or modify the award during the three-month statutory period prescribed by section 12 of the FAA. *Id.* MCI moved to enforce the arbitration award one year after it was issued. *Id.* In its response to MCI's motion, Exalon contested the existence of a valid agreement to arbitrate. *Id.* The federal district court rejected Exalon's challenge and confirmed the award. *Id.* The First Circuit reversed, holding that "a party that contends that it is not bound by an agreement to arbitrate can . . . simply abstain from participation in the proceedings, and raise the inexistence of a written contractual agreement to arbitrate as a defense to a proceeding seeking confirmation of the arbitration award[] without the limitations contained in section 12." *Id.* at 430.

*Exalon* is not controlling. We note that *Exalon* does not reflect a majority view. Other courts considering the issue have held that once the three-month statutory period contained in section 12 has expired, a party may not attempt to vacate an arbitration award for any reason. *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986).[4] Additionally, the *Exalon* opinion is narrower than Turner suggests. The First Circuit conceded that a case in which there was a signed

---

[4] *See also Cigna Ins. Co. v. Huddleston*, 986 F.2d 1418 (5th Cir. 1993) (no equitable tolling considerations once three-month period has run); *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir. 1985) (nonparticipating party may not "delay his challenge until the person in whose favor the award was made sue[d] to enforce it"); *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) (party may not move to vacate after three-month period, even when raised in opposition to motion to confirm); *Romero*, 551 F.Supp.2d at 1013 (party loses the right to oppose confirmation if motion to vacate filed outside of three-month period); *Int'l Tech. Integration, Inc. v. Palestine Liberation Org.*, 66 F.Supp.2d 3, 15–16 (D.D.C. 1999) (distinguishing *Exalon* and finding challenge to arbitration award untimely when filed outside of limitations period); *Smith*, 127 S.W.3d at 842 (rejecting argument that limitations period does not apply if a motion to vacate is filed in opposition to motion for confirmation of award).

contract with a standard arbitration clause would be "beyond the scope" of the *Exalon* opinion, which centered on the validity of an arbitration provision embedded in a tariff filed with a third party. 138 F.3d at 431. The *Exalon* court explicitly distinguished the case before it from the *Rudell* case out of the Seventh Circuit. *Exalon*, 138 F.3d at 431 (citing *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 139–40 (7th Cir. 1985)). The facts of *Rudell* more closely mirror the facts in this case, and we find the opinion instructive. In *Rudell*, as here, the nonparticipating parties filed an untimely motion to vacate claiming that they did not sign an agreement to arbitrate, despite the fact that a signed agreement to arbitrate was submitted to the court. 760 F.2d at 140. The Seventh Circuit held that a party, like Turner, who refused to participate in arbitration could not "delay his challenge until the person in whose favor the award was made sue[d] to enforce it." *Id.* at 139, 140.[5] We likewise hold that Turner's motion to vacate was inexcusably untimely. Accordingly, we do not consider Turner's other arguments concerning the validity of the underlying arbitration agreement or the fairness of the arbitration proceeding. We conclude that the trial court properly executed its "ministerial duty" to deny Turner's untimely motion to vacate and to grant Sea Tow's motion to confirm the arbitration award issued in its favor. *In re Chevron U.S.A., Inc.*, 419 S.W.3d 341, 351 (Tex. App.—El Paso 2010, no pet.).

## II.     *M/Y Four Play*

Texas state courts lack jurisdiction to consider *in rem* suits against a vessel. *De Wolf v. Kohler*, 452 S.W.3d 373, 382 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 446–47 (1994)). Even

---

[5] We note also that the First Circuit recently reiterated the distinction between *Exalon* and cases in which the existence of a written agreement to arbitrate is apparent. *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 99 n.10 (1st Cir. 2015).

though Turner did not raise subject matter jurisdiction as an issue in this appeal, we are obliged to determine whether jurisdiction was properly asserted in this case. *Id.* It is well-established that "an *in rem* suit against a vessel is . . . distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts." *Miller*, 510 U.S. at 446-47. Because the trial court lacked subject matter jurisdiction over Sea Tow's claim against *M/Y Four Play*, *in rem*, the trial court erred in awarding a judgment against the vessel. Accordingly, we reverse the trial court's judgment as to *M/Y Four Play* and remand with instructions to dismiss Sea Tow's petition to the extent Sea Tow seeks judgment against the vessel, for lack of subject matter jurisdiction.

## Conclusion

We affirm the trial court's judgment confirming the arbitration award in favor of Sea Tow and against Turner. We reverse the trial court's judgment confirming the arbitration award as to Turner's vessel *M/Y Four Play* and remand with instructions to dismiss the claims against *M/Y Four Play*, *in rem*, for lack of subject matter jurisdiction.


/s/    Marc W. Brown
Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown.

9