

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-14-00249-CV**

BRAND FX, LLC D/B/A BRAND FX BODY COMPANY                    APPELLANT

V.

CURTIS RHINE                    APPELLEE

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY
TRIAL COURT NO. CV14-05-321

----------

## OPINION

----------

In this interlocutory appeal, appellant Brand FX, LLC appeals from the trial court's order denying its motion to compel arbitration and later motion to reconsider. We reverse the trial court's order and remand for entry of an order compelling arbitration.

# I. BACKGROUND

## A. EMPLOYMENT WITH BRAND FX

Appellant Brand FX, LLC is "a Delaware limited liability company" that is publicly traded. Brand FX designs, produces, markets, and sells utility truck bodies and touts revenues of $75,000,000. On October 4, 2013, Brand FX hired appellee Curtis Rhine as its chief financial officer. On November 6, 2013, Rhine signed an employment contract with Brand FX, which set out Brand FX's performance expectations, provided for severance pay if Rhine was fired "for any reason other than [c]ause," and mandated that any employment disputes would be subject to arbitration. The arbitration clause provided:

> Any dispute related to your employment, performance, or compensation shall be resolved exclusively through arbitration, held in New York, New York by and in accordance with the rules of the American Arbitration Association. Decisions of the arbitrator shall be in accordance with applicable state law and not based upon the principle of *ex-aequo et bono*.[1] The arbitrator shall state the reasons for any award and shall not have the power to amend or modify this agreement. The unsuccessful party shall pay all costs of arbitration, including costs of the other party.

On November 27, 2013, Rhine entered into a separate subscription agreement with Brand FX under which Rhine was able to buy publicly-traded Brand FX stock and acquire a 1% interest in Brand FX.

On February 13, 2014, Brand FX's chief executive officer and Rhine's immediate supervisor, Art De St. Aubin, informed Rhine by letter of "concerns

---

[1]This doctrine allows a decision-maker to decide issues under equitable principles instead of legal rules. *Black's Law Dictionary* 679–80 (10th ed. 2014).

with respect to [Rhine's] employment," delineated several instances of "willful misconduct," and offered Rhine "an opportunity to cure" (the notice letter).  De St. Aubin warned Rhine that if he failed to improve within thirty days, he would be fired for cause as provided in the employment contract.  On March 17, 2014, Brand FX fired Rhine for cause.

## B.  UNDERLYING SUIT, DEFAULT, AND MOTION TO COMPEL ARBITRATION

Rhine filed suit against Brand FX, alleging that Brand FX (1) committed "statutory libel per se" by asserting in the notice letter that Rhine committed willful misconduct and (2) breached the employment contract by failing to provide a cure period in good faith, falsely asserting his termination was for cause, and failing to give him severance pay.  After Brand FX failed to timely answer, Rhine moved for default judgment as to Brand FX's liability.  *See* Tex. R. Civ. P. 239. The trial court granted the motion for default judgment and set a hearing for July 17, 2014 to hear evidence regarding Rhine's unliquidated damages.  *See* Tex. R. Civ. P. 243.  On July 15, 2014, Brand FX filed a motion to compel arbitration and also sought to have the default judgment set aside and a new trial ordered.  In its motion to compel, Brand FX raised the arbitration provision in the employment contract, asserted that Rhine's claims fell within the scope of the agreement, and sought arbitration "to the American Arbitration Association consistent with the terms of [the arbitration] agreement."  The trial court set a nonevidentiary hearing on Brand FX's motions for July 28, 2014.

3

Rhine filed a response to Brand FX's motion to compel on July 25, 2014, three days before the hearing. Rhine asserted that the arbitration clause was unenforceable because Brand FX waived its right to arbitrate and because the agreement was substantively unconscionable. Although Rhine served the response on Brand FX by certified mail, Brand FX did not receive the response until after the hearing and the trial court's ruling.

At the July 28 hearing, Rhine asserted for the first time that the arbitration clause was governed by the Texas Arbitration Act (the TAA) and not the Federal Arbitration Act (the FAA). The distinction was important because under the TAA, a personal-injury claim may not be subject to an arbitration agreement unless the party's attorney signs the arbitration agreement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002 (West 2011). Rhine also argued that the agreement was unconscionable and that Brand FX had waived arbitration. Brand FX asserted that the agreement was governed by the FAA because of its activities involving interstate commerce and that it had not waived its right to arbitrate. At the hearing, the trial court denied the motion to compel but set aside the default judgment.

## C. MOTION TO RECONSIDER

On August 5, 2014, Brand FX filed a motion to reconsider the denial to allow the trial court to "address [Rhine's] arguments" raised at the hearing and included in Rhine's response, which Brand FX received after the hearing and the trial court's ruling. Brand FX attached De St. Aubin's affidavit, which expounded

4

upon Brand FX's activities involving interstate commerce and averred that Rhine's duties included supervising Brand FX's financial activities in Brand FX's manufacturing locations in Iowa, Indiana, Minnesota, and Texas. Brand FX more fully responded to Rhine's waiver argument and addressed whether the agreement was substantively unconscionable. In its prayer for relief, Brand FX requested that the trial court grant the motion to reconsider, abate Rhine's case, and "order [Rhine] to submit his claims to the American Arbitration Association consistent with the terms of their agreement." The trial court set a nonevidentiary hearing on Brand FX's motion to reconsider for August 11, 2014. Rhine responded to the motion to reconsider on August 7, 2014, and asserted that any evidence filed in support of the motion to reconsider that was not part of the trial court's initial determination could not be taken into account on reconsideration. Rhine then asserted that because there was no evidence supporting an interstate-commerce connection, the TAA applied; thus, his defamation claim was not subject to the arbitration agreement. Finally, Rhine contended that the agreement was unconscionable, violated the rules of the American Arbitration Association (the AAA), and was waived. In addition, Rhine filed a motion to strike Brand FX's new evidence—namely, De St. Aubin's affidavit—submitted with its motion to reconsider.

At the hearing, Brand FX expounded on its arguments that the FAA applied, and Rhine asserted that no new evidence on the issue could be considered. Brand FX argued that its motion to reconsider was necessary

5

because it was "unaware that [Rhine] was going to argue that the [TAA] applied." Brand FX again raised its argument that the arbitration agreement was enforceable and that Rhine's claims fell within its scope. On August 15, 2014, the trial court denied Brand FX's motion to reconsider but did not rule on Rhine's motion to strike. On August 18, 2014, Brand FX filed a notice of appeal from the order denying its motion to compel and from the order denying its motion to reconsider. In a sole issue, Brand FX asserts that the trial court abused its discretion by failing to compel arbitration.

## II. DISCUSSION

### A. SCOPE OF OUR REVIEW

Rhine asserts that we may not consider the evidence Brand FX submitted with its motion to reconsider to support its argument that the FAA applied. Indeed, Rhine has filed a motion to strike "any untimely evidence" from the clerk's record. Rhine bases his argument on the fact that an interlocutory appeal from a motion to reconsider the denial of a motion to compel is not statutorily authorized. Thus, Rhine posits that any filings relating to the motion to reconsider are not properly part of this appeal, which is only authorized as to the denial of the motion to compel.

We conclude that striking properly filed trial court documents from the clerk's record would be inappropriate. Any document that was filed in the trial court is subject to designation in the clerk's record. *See generally* Tex. R. App. P. 34.5. But our scope of review is not determined by a document's inclusion in

6

the clerk's record. *See In re C.A.K.*, 155 S.W.3d 554, 559 (Tex. App.—San Antonio 2004, pet. denied) (refusing to strike items from clerk's record and noting "inclusion of a document in the clerk's record does not necessarily mean it is relevant to the merits of the appeal"); *Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (recognizing filing of supplemental clerk's record does not compel consideration of its contents). If we may appropriately consider a document in the clerk's record as part of our authorized review of a trial court's order or judgment, we will. And the converse is true as well. *See generally* Hon. Deborah Hankinson & Rick Thompson, *Standards and Scope of Review*, 29 The Advocate (Tex.) 6, 6 (2004) ("The scope of review, as the name suggests, delineates the portion of the appellate record that an appellate court may consider in deciding whether the trial court erred and whether that error warrants reversal."). Therefore, we deny Rhine's motion to strike portions of the clerk's record.

But we are still left with the question of whether the evidence Rhine submitted to the trial court in support of its motion to reconsider should be considered in our review of the trial court's denial of arbitration.[2] Interlocutory orders may be appealed only if permitted by statute and only to the extent jurisdiction is conferred by statute. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266,

---

[2]Rhine does not argue that Brand FX failed to timely file its notice of appeal; thus, our jurisdiction is not at issue. Rhine only asserts that the legislature's limited grant of appellate jurisdiction over interlocutory appeals affects the scope of our review, not our jurisdiction in this instance.

7

272 (Tex. 1992) (orig. proceeding). We strictly construe statutes authorizing interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. *CMH Homes v. Perez*, 340 S.W.3d 444, 447–48 (Tex. 2011); 3 Roy W. McDonald & Elaine Carlson, *Texas Civil Practice* § 19:56 (2d ed. 2000 & Supp. 2013–14). Under both the FAA and the TAA, the denial of a motion to compel arbitration is immediately appealable, but the denial of a motion to reconsider the denial of a motion to compel arbitration is not immediately appealable. *See* 9 U.S.C.A. § 16 (West 2009); Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015), § 171.098 (West 2011); *Nazareth Hall Nursing Ctr. v. Castro*, 374 S.W.3d 590, 593–94 (Tex. App.—El Paso 2012, no pet.); *AXA Fin., Inc. v. Roberts*, No. 03-07-00079-CV, 2007 WL 2403210, at *3 (Tex. App.—Austin Aug. 23, 2007, no pet.) (mem. op.).

We conclude that we may not consider any new evidence submitted in support of Brand FX's motion to reconsider. Although we have jurisdiction over this appeal because Brand FX filed its notice of appeal within twenty days after the trial court denied its motion to compel, we may not review the denial of the motion to reconsider. Our statutory authorization does not extend to such orders under either the FAA or the TAA. *See* 9 U.S.C.A. § 16; Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.098. In its motion to reconsider, Brand FX requested the same relief and relied on the same arbitration agreement that it had included in its motion to compel. *See Nazareth Hall*, 374 S.W.3d at 594 (concluding

8

interlocutory appeal from denial of motion to reconsider not authorized under the FAA because motion to reconsider based on same arbitration agreement which was subject of motion to compel); *cf. Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 348–49 (Tex. App.—El Paso 2012, no pet.) (holding interlocutory appeal from amended motion to compel authorized under the FAA because amended motion to compel was based on separate and different arbitration agreement than agreement relied on in original motion to compel; thus, amended motion was not a disguised motion to reconsider). Further, the arguments Brand FX raised to the trial court at the hearing on its motion to compel were again included in its motion to reconsider. Therefore, because an interlocutory appeal is not authorized from the denial of a motion to reconsider in these circumstances, we will not consider any new evidence submitted in support of Brand FX's motion to reconsider. *Cf. Lopez v. Casa Pontiac GMC Buick, Inc.*, No. 14-11-00001-CV, 2011 WL 5926683, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.) (holding affidavit filed after motion to compel denied, which raised unconscionability defense to arbitration, could not be considered as evidence supporting the defense).

Brand FX heavily relies on a mandamus opinion from the Texas Supreme Court in which the supreme court considered evidence submitted in support of a motion to reconsider the denial of a motion to compel and concluded that the FAA applied to an arbitration agreement. *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 68 (Tex. 2005) (orig. proceeding). In *Nexion*, however, the

9

supreme court merely determined that Nexion did not waive its right to arbitration under the FAA merely because it raised the application of the FAA for the first time in its motion to reconsider. *Id.* at 68–69. The *Nexion* court was not faced with statutory authorization to review the denial of a motion to reconsider the ruling on a motion to compel arbitration and whether that statutory authorization extended to a review of a denial of a motion to reconsider. Indeed, interlocutory appeals from the denial of a motion to compel were not authorized until 2009. *See In re Santander Consumer USA, Inc.*, 445 S.W.3d 216, 218 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). Thus, *Nexion* is inapplicable to the procedural posture of this appeal.

## B. FAA OR TAA?

Brand FX argues that the FAA applied to the trial court's determination of the enforceability of the arbitration agreement. Rhine contends that because Brand FX did not meet its burden to prove application of the FAA, the TAA applies. As we stated before, this distinction is important because it determines which claims are subject to the arbitration agreement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002.

The FAA applies to any contract that contains a written agreement to arbitrate, covers a dispute at issue, and involves interstate commerce. *See* 9 U.S.C.A. § 2; *Tex. Echo Land & Cattle, LLP v. Gen. Steel Domestic Sales, LLC*, No. 02-12-00372-CV, 2013 WL 3064513, at*1 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op.). Rhine argues that the TAA applies to the

10

enforceability of the arbitration agreement because Brand FX failed to carry its burden to show that the contract involved interstate commerce. Because the arbitration agreement at issue did not explicitly state that the FAA or the TAA applies, Brand FX bore the burden to show that the FAA governed the arbitration agreement. *See IKON Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 696 (Tex. App.—Houston [14th Dist.] 1999, no pet. & orig. proceeding). This burden is not onerous and is satisfied with evidence that the contract in fact has some link to interstate commerce. *See Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 789–90 (Tex. App.—Fort Worth 2008, no pet. & orig. proceeding); *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 719–20 (Tex. App.—Fort Worth 1997, orig. proceeding). "Commerce under the [FAA] is broadly construed and the amount of commerce considered in the contract need not be substantial." *In re Chevron U.S.A., Inc.*, 419 S.W.3d 329, 336 (Tex. App.—El Paso 2010, orig. proceeding [mand. denied]).

In the employment context, the "relationship between an employer who is regularly engaged in activities related to interstate commerce and its employees is affected by interstate commerce as a matter of law and implicates commerce clause issues." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex. App.—El Paso 2005, orig. proceeding). The evidence before the trial court when it decided Brand FX's motion to compel showed that Brand FX was incorporated in Delaware with its principal place of business in New York. *See Jack B. Anglin*, 842 S.W.2d at 270 (holding court may consider pleadings and any other

11

evidence before the trial court at the time of the motion to compel arbitration to determine whether a contract affects interstate commerce). Brand FX designs, manufactures, produces, and sells composite (as opposed to steel) utility truck bodies, toppers, and inserts. The trucking industry is commonly known to involve interstate commerce. *Cf. Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 98 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding manufacturer of steel for the oil-and-gas industry was engaged in interstate commerce for purposes of the FAA); *Chevron*, 419 S.W.3d at 336 (concluding arbitration agreement governed by the FAA because claims to be arbitrated concerned the oil-and-gas industry, which involves interstate commerce as "a matter of common knowledge"). Although Rhine was hired to work out of Brand FX's office in Texas, Rhine's position as CFO required him to oversee Brand FX's financial operations at all its locations. Brand FX's "Operating Partner" who offered Rhine the job with Brand FX was located in New York. Rhine's employment with Brand FX provided for Rhine's ability to purchase a percentage ownership interest in Brand FX, a publicly-traded corporation.

We conclude that these facts established as a matter of law that the parties' contract affected or involved interstate commerce; thus, the arbitration agreement was governed by the FAA.[3] *See, e.g., Capital Income Props.–LXXX*

---

[3]As a result, the arbitration agreement governed Rhine's personal-injury claim—statutory libel per se—even though not signed by Rhine's attorney. *See In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) (orig. proceeding). The

12

*v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding); *Forged Components*, 409 S.W.3d at 98; *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 269 (Tex. App.—Houston [14th Dist.] 2004, no pet. & orig. proceeding). Accordingly, we will review the trial court's factual and legal determinations regarding the enforceability of the arbitration agreement under the dictates of the FAA.

## C. STANDARD OF REVIEW

We review the denial of a motion to compel arbitration for an abuse of discretion. *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied). *See generally* 6 Roy W. McDonald & Elaine Carlson, *Texas Civil Practice* § 44:19[a] (2d ed. rev. 2014) (discussing appellate standard of review regarding arbitration issues). In this review, we defer to a trial court's factual findings if they are supported by the evidence but accord no deference to a trial court's resolution of questions of law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008), *cert. denied*, 555 U.S. 1103 (2009).

Whether there is a valid and enforceable arbitration agreement is a legal question subject to de novo review. *Id.*; *Garcia*, 340 S.W.3d at 869. Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, a strong presumption in favor of arbitration arises and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration.

FAA preempts the TAA's signature requirement for personal-injury claims. *Nexion*, 173 S.W.3d at 69.

13

Whether the party resisting arbitration has established a defense to arbitration—such as waiver or unconscionability—is a legal issue also subject to de novo review. *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding); *Perry Homes*, 258 S.W.3d at 598; *Delfingen US–Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet.). The determination of any facts relevant to a defense, however, is a question of fact for the trial court, which we review deferentially for record support. *Delfingen*, 407 S.W.3d at 798–800. If an arbitration agreement is present, the claims are encompassed by the agreement, and the party opposing arbitration failed to prove any defense to enforcement, the trial court has no discretion but to compel arbitration. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding). In other words, a trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has abused its discretion. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex.) (orig. proceeding), *cert. denied*, 131 S. Ct. 319 (2010).

## D. ENFORCEABILITY OF ARBITRATION AGREEMENT

Rhine does not assert that he and Brand FX did not enter into an arbitration agreement or that his claims do not fall within the scope of the arbitration agreement under the FAA. Rhine contends that the arbitration agreement is unenforceable because Brand FX waived its right to seek arbitration and the agreement itself was substantively unconscionable.

14

## 1. Waiver

Rhine argues that Brand FX waived the right to compel arbitration by substantially invoking the judicial process. Rhine asserts that by moving for a new trial and by failing to move for arbitration before its liability was established, Brand FX substantially invoked the judicial process to Rhine's detriment and, thus, waived its right to arbitration. A party waives an arbitration provision when it substantially invokes the judicial process to the other party's detriment. *In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex. 2007) (orig. proceeding). "[T]here is a strong presumption against waiver," and even if present, it must be intentional. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996) (writ of error & orig. proceeding). The Texas Supreme Court has explicitly held that a party does not substantially invoke the judicial process by moving to set aside a default judgment and requesting a new trial. *Bank One*, 934 S.W.2d at 827; *see also Paul Jacobs, P.C. v. Encore Bank, N.A.*, No. 01-12-00699-CV, 2013 WL 3467197, at *4 (Tex. App.—Houston [1st Dist.] July 9, 2013, no pet.) (mem. op.) (collecting cases regarding what actions are not considered substantial invocation). We can hold no differently here and therefore conclude that Brand FX did not substantially invoke the judicial process such that it waived its right to compel arbitration. Rhine failed to meet his burden to establish waiver.

## 2. Unconscionability

Rhine next argues that the arbitration agreement was substantively unconscionable because it potentially would shift the costs of the arbitration to

15

Rhine if he lost, New York is not an appropriate forum, and the arbitrator does not have the ability to modify the agreement. As we previously stated, unconscionability is a question of law that we review de novo, while deferring to the trial court's discretion to determine the facts relevant to the issue. *See Whataburger Restaurants LLC v. Cardwell*, 446 S.W.3d 897, 908 (Tex. App.—El Paso, 2014, pet. filed). Rhine's unconscionability arguments raise the gross one-sidedness of the agreement's terms. *See Olshan Found. Repair Co. v. Ayala*, 180 S.W.3d 212, 215 (Tex. App.—San Antonio 2005, pet. denied). We conclude that Rhine failed to meet his burden to prove his defenses to enforcement of the arbitration agreement; thus, the trial court's contrary conclusion on these issues of law was an abuse of discretion.

Rhine first contends that the cost-shifting provision renders the agreement unconscionable. Although excessive costs of arbitration may in certain circumstances render an arbitration agreement substantively unconscionable, the potential for shifting costs, standing alone, does not render an arbitration agreement unconscionable. *FirstMerit Bank*, 52 S.W.3d at 757; *Lawson v. Archer*, 267 S.W.3d 376, 384 (Tex. App.—Houston [14th Dist.] 2008, no pet. & orig. proceeding); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 859–60 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]). There is no evidence in the record to support the amount of potential costs or Rhine's inability to pay those potential costs should he lose. Rhine failed to establish that the cost-shifting provision rendered the agreement unconscionable. *See Green*

16

*Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 522 (2000); *Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 181–82 (Tex. App.—Dallas 2013, no pet.); *G.T. Leach Builders, L.L.C. v. TCMS, Inc.*, No. 13-11-310-CV, 2012 WL 506568, at \*5–6 (Tex. App.—Corpus Christi Feb. 16, 2012, no pet.) (mem. op.); *cf. Olshan Found.*, 180 S.W.3d at 215–16 (holding evidence of amount of AAA's fees combined with plaintiff's testimony that he could not pay the fees established arbitration agreement was unconscionable).

As part of his unconscionability argument based on cost shifting, Rhine asserts that the applicable arbitration rules—the rules of the AAA—prohibit the shifting of fees onto the losing party. As pointed out by Brand FX, the AAA rule relied on by Rhine solely addresses arbitrator expenses and does not expressly prohibit other cost shifting between the parties. Further, Rhine's failure to submit any evidence supporting his argument that the cost shifting would be unfair or unreasonably one-sided is fatal to his unconscionability argument. *See Whataburger*, 446 S.W.3d at 912–13 (holding no evidence admitted to show AAA fees and costs specifically applicable to arbitration; thus, trial court erred by concluding agreement unconscionable); *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 848–50 (Tex. App.—Texarkana 2013, no pet.) (holding trial court erred by concluding agreement was substantively unconscionable because no evidence showed costs of arbitration would be prohibitively expensive). *See generally* 7 Tex. Jur. 3d *Arbitration & Award* § 26 (2013) (discussing considerations courts use to determine if agreement

unconscionable based on excessive cost and noting employee must present supporting evidence).

Rhine next argues that the choice of forum in the agreement—New York—renders the agreement unconscionable because New York is not an adequate and accessible substitute to litigation. His argument solely rests on the increased expenses involved if all parties and witnesses were required to travel to New York to arbitrate the dispute. Again, it was Rhine's burden to prove the likelihood of incurring such costs and to provide some specific information concerning those potential costs. *See Odyssey Healthcare*, 310 S.W.3d at 422; *Poly–Am.*, 262 S.W.3d at 356. "[T]he 'risk' that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree*, 531 U.S. at 91, 121 S. Ct. at 522. Other than Rhine's conclusory assertions that he might incur substantial costs and expenses if all parties and witnesses are located outside of New York and if he fails to prevail, there is no record evidence showing what the costs would be or that those costs would consume his potential recovery. Rhine failed to carry his burden to show the forum-selection clause in the arbitration agreement was unconscionable. *See Odyssey Healthcare*, 310 S.W.3d at 422.

In his final argument, Rhine asserts that the agreement is unconscionable because the arbitrator does not have the discretion to amend or modify the agreement. We can find no case law supporting Rhine's assertion that a limitation on the authority of the arbitrator, which does not preclude the arbitrator

18

from interpreting the parties' agreement and applying it to the facts of the dispute, renders an arbitration agreement unconscionable. Although Rhine cites *Poly–America* in support of his assertion, that case merely provided that because the contract at issue allowed the arbitrator to modify unconscionable terms, the cost-splitting provision could not be found unconscionable. *Poly–Am.*, 262 S.W.3d at 357. We do not read *Poly–America* to require a conclusion that all agreements not giving the arbitrator discretion to modify the agreement are unconscionable as a matter of law. Further, this argument is predicated on Rhine's assertion that the cost provisions are unconscionable, rendering the lack of arbitrator discretion to modify the cost provisions likewise unconscionable. We already have concluded that Rhine failed to carry his burden to show that the cost provisions were unconscionable; therefore, his lack-of-discretion assertion fails as well.

### III. CONCLUSION

Although we did not consider any evidence submitted in support of Brand FX's motion to reconsider, we conclude that Brand FX showed that its employment contract with Rhine affected interstate commerce such that the FAA applies to the arbitration agreement. Brand FX met its burden to show the existence of a valid arbitration agreement between the parties; however, Rhine failed to meet his burden to prove his defenses against enforcing the otherwise valid arbitration provision. *See FirstMerit Bank*, 52 S.W.3d at 756. Thus, the trial court clearly abused its discretion by failing to compel arbitration. *See Odyssey*

19

*Healthcare*, 310 S.W.3d at 422.  We sustain Brand FX's issue on appeal, reverse the trial court's order denying Brand FX's motion to compel arbitration, and remand to the trial court for entry of an order compelling the parties' dispute to arbitration pursuant to the parties' arbitration agreement.  *See* Tex. R. App. P. 43.2(d), 43.3(a); *IHS Acquisition No. 171 v. Beatty-Ortiz*, 387 S.W.3d 799, 810 (Tex. App.—El Paso 2012, no pet.).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED:  February 26, 2015