

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00401-CV
No. 02-18-00402-CV

———————————————

FRIEDMAN & FEIGER, LLP, Appellant

V.

ROBERT E. MASSEY, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR
OF THE ESTATE OF WILLIAM EARL MASSEY, Appellee

On Appeal from County Court at Law No. 2
Parker County, Texas
Trial Court No. CIV-15-0299

Before Sudderth, C.J.; Gabriel and Wallach, JJ.[1]
Memorandum Opinion on Rehearing by Justice Gabriel

---

[1]The Honorable Mike Wallach, Judge of the 348th District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

## MEMORANDUM OPINION ON REHEARING

Appellee Robert E. Massey, Individually and as Independent Executor of the Estate of William Earl Massey, filed a motion for rehearing of our original opinion that issued on June 6, 2019. We deny the motion, withdraw our opinion and judgments dated June 6, 2019, and substitute the following.

In a single issue in these consolidated appeals, appellant Friedman & Feiger, LLP appeals from the trial court's order denying its motion to compel arbitration of counterclaims Massey asserted against it and from the temporary injunction the trial court rendered enjoining it from proceeding with arbitration. We reverse and remand.

## I. BACKGROUND

Robert Massey is the executor of his late father's estate. On behalf of the estate, he engaged a law firm to file a lawsuit against a company called EECU. After the lawsuit was filed, Massey sought to have Friedman take over representation of the estate's claims against EECU. To that end, in October 2013, Massey entered into a contingency fee agreement with Friedman, signing the agreement in both his capacity as executor and his individual capacity.

The agreement provided that Massey had retained Friedman to represent the estate in claims against EECU, including the lawsuit, in exchange for Friedman receiving forty percent of any recovery on those claims. The agreement also provided that Massey had not retained Friedman to provide any representation other than for the claims against EECU and that "a separate fee contract [would] be negotiated if

2

[Massey] desire[d] representation in other matters." Additionally, there was an arbitration clause, which provided,

> Any dispute concerning any aspect of [Friedman's] representation of [Massey, individually and as executor] relating to the [claims against EECU] and/or under this Contingent Fee Contract, whether sounding in contract or tort, shall be resolved by binding arbitration to be determined by Judicial Arbitration and Mediation Services, Inc. in Dallas, Texas. Any such dispute shall be heard (to the full extent possible) within sixty (60) days of filing a demand for arbitration, and no discovery shall be permitted in connection with such arbitration hearing. In addition, the prevailing party in such arbitration shall be entitled to recover all costs and expenses, including attorney fees, incurred with respect to such proceeding.

Massey settled the lawsuit in exchange for EECU's payment of $738,600, and those funds were deposited into Friedman's trust account. Massey entered into another agreement with Friedman whereby Friedman agreed to reduce its contingency fee to thirty-three and one-third percent. This resulted in Friedman collecting $245,953.80 as its contingency fee, as well as an additional $9,286.49 for its expenses.

Three creditors of both Massey and the estate subsequently raised claims against the remaining settlement funds. According to Friedman, Massey asked the firm to represent him and the estate in resolving those third-party claims, but Massey disputes that he made any such request or authorized that representation. Regardless, Friedman undertook representation for the third-party claims and ultimately settled two of them for a cumulative total of $150,000. The third creditor made a claim for $69,900. Friedman's attempt to settle that claim was unsuccessful, so it deposited

3

$69,900 into the registry of the probate court where Massey's father's estate was pending.[2]

Friedman then sent a bill to Massey for $46,620.78 for its services related to the third-party claims. However, Massey noted that at least some of the billing entries reflected work Friedman had performed in resolving the claims against EECU rather than the third-party claims. Friedman concedes that $5,532.50 of the amount it billed Massey was for services it had performed related to the resolution of the EECU claims, which was covered by the October 2013 contingency fee agreement. In its brief, Friedman asserts that its inclusion of that amount in the bill was inadvertent and that it does not seek to recover that $5,532.50. We note that Friedman amended its pleadings in this case, alleging that certain billing entries in the bill reflected services related to the EECU claims and unrelated to the third-party claims. Friedman further alleged that it sought to recover $41,088.28, which it alleged represented the total amount due for its services in settling and attempting to settle the third-party claims.

Massey did not pay the bill, so in January 2015, Friedman filed a claim against the estate seeking to recover the fees. Friedman later sued Massey and the estate, alleging breach of contract, sworn account, and quantum meruit claims arising out of the services it had provided for the third-party claims. Friedman also alleged claims

---

[2]The case was later transferred to the county court at law. *See* Tex. Est. Code Ann. § 32.004.

for fraud and negligence related to the October 2013 contingency fee agreement, asserting that Massey had represented to Friedman that the probate court had approved a contingency fee of forty percent for services related to the EECU claims, a representation that Friedman alleged was false, and that Friedman had relied on that representation in entering the agreement.[3] Friedman asserted it suffered unspecified damage as a result of the alleged misrepresentation.

In response to Friedman's amended claim in the probate court, Massey filed a general denial in June 2015. As an affirmative defense, he also asserted that Friedman was seeking a total fee that exceeded one-third of the amount recovered on the EECU claims and that Friedman had failed to obtain the probate court's approval for a contingency fee that exceeded one-third of the recovery obtained on those claims.

The record shows little additional pretrial activity occurred with respect to Friedman and Massey until June 4, 2018, when Massey filed a motion for partial summary judgment on Friedman's claims. In the motion, Massey argued that the October 2013 contingency fee agreement was void because section 351.152 of the Texas Estates Code required the probate court to approve any contingency fee that exceeded one-third, and the probate court had never approved the October 2013 contingency fee agreement. However, Massey did not assert any affirmative claims

---

[3]It is undisputed that Friedman did not assert these fraud and negligence claims until September 26, 2018, when it filed its second amended petition and original third-party petition.

against Friedman until August 7, 2018, when he filed his "Defendants' Original Counterclaim," in which he asserted various affirmative claims, including claims based on the assertion that the October 2013 contingency fee agreement violated section 351.152 and thus was void.

On September 6, 2018, Friedman filed an answer to Massey's August 7, 2018 counterclaims, as well as a motion to compel arbitration of those counterclaims under the Texas General Arbitration Act because, Friedman alleged, they concerned disputes over its representation of Massey and the estate in resolving the EECU claims and thus fell within the scope of the October 2013 contingency fee agreement's arbitration clause. Massey filed a response, alleging that the arbitration clause was unenforceable because it was unconscionable and because Friedman had waived arbitration.

On October 16, 2018, Friedman filed a demand for arbitration with JAMS in Dallas. On November 7, 2018, Massey filed in the trial court an application for an injunction enjoining Friedman from proceeding with the arbitration. The trial court conducted a hearing on Friedman's motion to compel arbitration[4] and Massey's application for injunction after which it denied Friedman's motion without stating its

_____

[4]At the hearing on Friedman's motion to compel arbitration, Massey additionally asserted that no arbitration agreement existed in this case because the entire October 2013 contingency fee agreement was void for violating section 351.152 of the estates code.

reasons for doing so and granted Massey a temporary injunction enjoining Friedman from "proceeding with arbitration in this matter unless, and until such time as, the Court compels arbitration." Friedman has appealed both orders. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(4) (authorizing interlocutory appeal from order granting temporary injunction), 171.098(a)(1) (authorizing interlocutory appeal from order denying motion to compel arbitration made under section 171.021).

## II. ISSUES, APPLICABLE LAW, AND STANDARD OF REVIEW[5]

In a single issue, Friedman asserts the trial court abused its discretion by denying its motion to compel arbitration and enjoining it from arbitrating Massey's counterclaims. We review a trial court's denial of a motion to compel arbitration for an abuse of discretion *See Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 395 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement. *Rachal v. Reitz,*

---

[5]The arbitration agreement at issue here does not specify whether it is governed by the Federal Arbitration Act (FAA) or the Texas General Arbitration Act (TGAA). But no party argues that the FAA preempts the TGAA or is materially different on any issue in this case. Thus, we need not address whether the TGAA or the FAA applies, and we may take guidance from decisions addressing both the FAA and the TGAA. *See S.C. Maxwell Family P'ship, Ltd. v. Kent*, 472 S.W.3d 341, 343 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 n.14 (Tex. 2015)); *see also Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008) (noting that many of the principles underlying the FAA and the TGAA are the same and relying interchangeably on cases that discuss the FAA and the TGAA where appropriate).

403 S.W.3d 840, 843 (Tex. 2013). If the party seeking arbitration does so, the burden shifts to the party opposing arbitration to establish a valid defense to enforcing arbitration, such as waiver or unconscionability. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *see also Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015) (noting that unconscionability is a valid defense to arbitration); *Holmes, Woods & Diggs v. Gentry*, 333 S.W.3d 650, 654 (Tex. App.—Dallas 2009, no pet.) (noting that waiver is a valid defense to arbitration).

A trial court's determination regarding whether a valid agreement to arbitrate exists is a question of law that we review de novo. *J.M. Davidson*, 128 S.W.3d at 227. Additionally, whether the party resisting arbitration has established a defense to arbitration is a legal question that is also subject to de novo review. *Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 205 (Tex. App.—Fort Worth 2015, no pet.).

## III. DISCUSSION

As noted above, Massey urged the trial court to deny Friedman's motion to compel arbitration for three reasons. First, he argued that no valid arbitration agreement exists because the entire October 2013 contingency fee agreement is void, alleging it violated section 351.152 of the estates code. Second, he argued that Friedman had waived its right to arbitrate. Third, he argued that the arbitration clause

8

was unenforceable because it was unconscionable.[6]  Because the trial court did not issue findings of fact or conclusions of law or state a basis for its decision in its order denying Friedman's motion to compel arbitration, we must uphold the trial court's ruling if there is sufficient evidence to support it on any legal theory Massey raised in the trial court.  *See Kehoe v. Pollack*, 526 S.W.3d 781, 791 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex. App.—Texarkana 2013, no pet.).

## A.  THE ARBITRATION AGREEMENT'S VALIDITY

Friedman argues that it established a valid arbitration agreement exists:  the one within the October 2013 contingency fee agreement.  Massey does not dispute the existence of the contingency fee agreement or that it contains an arbitration clause.  Nor does he attack the validity of the arbitration clause itself.  Instead, Massey argues that the entire contingency fee agreement, and thus the arbitration provision, is invalid

---

[6]Additionally, in his brief, Massey seems to assert that Friedman attempted to compel its own breach of contract, sworn account, quantum meruit, fraud, and negligence claims into arbitration.  Massey argues that those claims cannot be compelled into arbitration because they either fall outside the scope of the arbitration agreement or are barred by the applicable statute of limitations.  We do not address these arguments because they are not at issue in this appeal.  At issue in this appeal is the trial court's ruling on Friedman's motion to compel arbitration.  And Friedman's motion to compel arbitration did not seek to compel its own claims into arbitration.  Rather, it sought only to compel arbitration of Massey's counterclaims.  In its motion, Friedman sought an order compelling arbitration because "[t]he claims asserted by [Massey] against [Friedman] in the Counterclaim [were] squarely within the scope of the arbitration provision."  The trial court denied that motion, and that is the order from which Friedman has appealed.

9

because it violated section 351.152 of the estates code. According to Massey, under section 351.152, any contingency fee contract an executor enters into for the purpose of obtaining legal services for the recovery of estate property is void if the contingent fee exceeds one-third, unless a court approves the greater-than-one-third contingency fee. Massey observes that the October 2013 contingency fee agreement provided for a contingent fee greater than one-third, and he asserts that no court ever approved that fee. Thus, Massey concludes, under section 351.152, the entire October 2013 contingency fee agreement was void ab initio. And since the entire contingency fee agreement was void ab initio, Massey argues, no valid arbitration agreement exists.

Friedman responds that the trial court could not have denied its motion to compel arbitration on the void-ab-initio ground Massey raised because whether the contingency fee agreement as a whole was void ab initio is a dispute that must be decided by the arbitrator, not the court. Friedman is correct.

There are two types of challenges to an arbitration provision: (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid. *In re Labatt Food Serv.*, 279 S.W.3d 640, 647–48 (Tex. 2009) (orig. proceeding). The "doctrine of separability" applies to arbitration agreements governed by the FAA. *See In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 185 (Tex. 2009) (orig. proceeding). Under that doctrine, an arbitration provision is

10

separable from the rest of a contract, such that a challenge to the validity of the entire contract is a question for the arbitrator, while a challenge directed specifically to the arbitration provision itself may be resolved by a court. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448–49 (2006); *Labatt*, 279 S.W.3d at 648. Massey's void-ab-initio argument falls into the former category—it broadly challenges the entire October 2013 contingency fee agreement on the ground that one of its provisions, the forty percent contingency fee, is illegal, rendering the entire agreement invalid; it does not specifically challenge the arbitration clause itself. *See Labatt*, 279 S.W.3d at 648–49. Accordingly, that is a challenge for the arbitrator, not the trial court. *See id.*; *Schmidt Land Servs., Inc. v. UniFirst Corp.*, 432 S.W.3d 470, 473–75 (Tex. App.—San Antonio 2014, pet. denied).[7] For that reason, the trial court could not have denied Friedman's motion to compel arbitration on the basis of Massey's void-ab-initio theory.

## B. WAIVER

We turn to Friedman's argument that the trial court could not have denied its motion to compel arbitration on the basis of waiver.

---

[7]We recognize that we have referenced cases applying the FAA in our analysis of Massey's void-ab-inito argument. We reiterate that no party argues that the FAA materially differs from the TGAA on any issue in this case. *See G.T. Leach*, 458 S.W.3d at 519 n.14; *Forest Oil*, 268 S.W.3d at 56 n.10. Further, we note that at least one of our sister courts has expressly applied the doctrine of separability to arbitration agreements that are governed by the TGAA. *See S.C. Maxwell*, 472 S.W.3d at 344.

Waiver of a valid and applicable arbitration agreement may be express or implied. *See G.T. Leach*, 458 S.W.3d at 511. As he did in the trial court, Massey argues that Friedman impliedly waived its right to enforce the arbitration agreement through its conduct. As such, Massey had the burden to prove that (1) Friedman "substantially invoked the judicial process"—engaged in conduct inconsistent with a claimed right to compel arbitration and (2) the inconsistent conduct caused Massey to suffer a detriment or prejudice. *See id.* at 511–12. Because the law strongly favors arbitration, Massey's burden to prove waiver "is a high one." *Perry Homes v. Cull*, 258 S.W.3d 580, 590 (Tex. 2008). It is so high, in fact, that appellate courts seldom find an implied waiver through litigation conduct. *See, e.g.*, *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430–31 (Tex. 2016); *Richmont Holdings, Inc. v. Superior Recharge Sys., LLC*, 455 S.W.3d 573, 575 & n.1 (Tex. 2014); *see also Perry Homes*, 258 S.W.3d at 590 (in appeal finding waiver, stating court had "never" before found implied waiver through litigation conduct).

We determine whether Friedman impliedly waived its right to seek arbitration based on the totality of the circumstances and are guided by several factors, including:

> whether the party asserting the right to arbitrate was plaintiff or defendant in the lawsuit, how long the party waited before seeking arbitration, the reasons for any delay in seeking to arbitrate, how much discovery and other pretrial activity the party seeking to arbitrate conducted before seeking arbitration, whether the party seeking to arbitrate requested the court to dispose of claims on the merits, whether the party seeking to arbitrate asserted affirmative claims for relief in court, the amount of time and expense the parties have expended in

12

litigation, and whether the discovery conducted would be unavailable or useful in arbitration.

*RSL Funding*, 499 S.W.3d at 430; *see also Perry Homes*, 258 S.W.3d at 590–91. No one factor is dispositive. *See RSL Funding*, 499 S.W.3d at 430. Even in close cases, the presumption against waiver governs. *Id.* We conclude the totality of the circumstances here does not support waiver by Friedman.

### 1. Length of and Reasons for Delay in Seeking Arbitration

Massey asserts that in Friedman's initial 2015 claim, it sought damages that included $5,532.50 worth of billing for legal services it had performed in resolving the EECU claims. He argues that by including that $5,532.50, Friedman's claim, at least in part, raised a dispute that was related to the October 2013 contingency fee agreement and, thus, was subject to its arbitration clause. Based on this argument, Massey calculates that Friedman filed an affirmative claim that was arbitrable and then waited more than three years before moving to compel arbitration. Massey contends that this delay weighs in favor of a waiver finding.

However, in its 2015 claim in the probate court, Friedman did not assert a dispute relating to the services it performed in resolving the EECU claims. Rather, it asserted only that it was entitled to recover, and seeking to recover, hourly fees for the services it had performed in settling and attempting to settle the third-party claims. It is true Friedman initially calculated that the amount due for those services was $46,620.78, and Friedman acknowledges that calculation included $5,532.50 worth of

13

services it had performed in resolving the EECU claims. But Friedman never asserted that it was entitled to, nor did it assert that it sought to, recover any hourly fees for services it performed in resolving the EECU claims, and it later amended its pleadings to correct the amount of fees it alleged Massey owes for the services it performed in settling and attempting to settle the third-party claims, alleging that amount to be $41,088.28. Because Friedman did not raise an arbitrable dispute in the claim it filed in 2015, we do not measure the waiver factors relating to delay from that date. *Cf. Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) ("As a rule, arbitration of a claim cannot be compelled unless it falls within the scope of a valid arbitration agreement.").

The record shows that the first time that any of the parties raised an affirmative claim that fell within the scope of the October 2013 contingency fee agreement's arbitration clause was on August 7, 2018, when Massey filed his original counterclaim. Since this is the first time an arbitrable claim was affirmatively asserted by either party, this is the proper point from which to measure any delay in Friedman's attempt to compel arbitration. Measuring from that point, the record shows that Friedman filed its motion to compel arbitration of Massey's counterclaims less than a month after Massey filed his original counterclaim. A delay of this short duration is not inconsistent with Friedman's claimed right to compel arbitration. *See RSL Funding*, 499 S.W.3d at 431 (noting cases involving delay as much as eight months and two years but which the supreme court nevertheless did not find waiver).

14

## 2. Whether Friedman is Plaintiff or Defendant and Whether it Asserted Affirmative Claims for Relief in Court

Friedman initiated litigation of this case. But as we explained, it did not initially assert any claims within the scope of the arbitration provision at issue here. Rather, it asserted only claims that arose out of the services it provided in settling and attempting to settle the third-party claims. We cannot say that a plaintiff's initiation of litigation against a defendant for claims that fall outside the scope of an arbitration agreement that exists between them is necessarily inconsistent with a claimed right to compel arbitration of the defendant's later-filed counterclaims that do fall within the scope of the parties' arbitration agreement.

## 3. Discovery, Pretrial Activity, and Whether Friedman Requested Disposition of the Merits

Massey argues that the fact Friedman engaged in discovery should weigh in favor of a waiver finding. But the only discovery Friedman conducted was a routine request for disclosure under rule 194, which Massey answered on August 24, 2015. Thus, the discovery Friedman engaged in was not only limited but also occurred before any claims within the scope of the arbitration agreement had been asserted. Additionally, Friedman did not seek to adjudicate Massey's claims on the merits in the trial court through summary judgment or a motion to dismiss.[8] *See G.T. Leach*,

---

[8]We note further that Friedman did not seek to have the trial court dispose of any of its own claims on the merits.

15

458 S.W.3d at 513. We conclude that neither Friedman's limited pretrial discovery nor its other pretrial activity is inconsistent with its claimed right to compel arbitration of Massey's counterclaims.

### 4. Amount of Time and Expense the Parties Have Expended in Litigation

Massey asserts this factor should weigh in favor of waiver because the case had been pending for over three years, and his original counsel in the case testified that Massey had incurred at least $12,000 in attorney's fees. But this is not a case where a party opposing arbitration was required to litigate arbitrable claims for a long period of time and incur a large expense in doing so, only to then have his opponent pull the rug out from under him by moving to compel arbitration of those very claims. *Cf. In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (orig. proceeding) (noting that a party can waive arbitration by conducting full discovery, filing motions going to the merits, and seeking arbitration only on the eve of trial). Here, the record shows the first time an arbitrable claim was affirmatively asserted in this case was when Massey filed his original counterclaim, and Friedman moved to compel arbitration of Massey's counterclaims less than a month after Massey asserted them.

Additionally, to support his assertion that he incurred more than $12,000 in attorney's fees, Massey points to a portion of the record wherein his former attorney testified that his hourly rate in 2013 or 2014 was $250 and that he had expended approximately forty-eight hours of time related to the hearing on Friedman's motion

16

to compel arbitration. Setting aside the fact that this testimony merely shows that Massey incurred fees related to the arbitrability of his counterclaims and not the merits of an otherwise arbitrable dispute, our sister court has held that even $50,000 in incurred attorney's fees "does not strongly favor a waiver finding." *Tantrum St., LLC v. Carson*, No. 05-16-01096-CV, 2017 WL 3275901, at *7 (Tex. App.—Dallas July 25, 2017, no pet.) (mem. op.).

We thus conclude the time-and-expense factor does not weigh in favor of waiver.

In sum, the totality of the circumstances here does not demonstrate that Friedman substantially invoked the judicial process, and thus Massey failed to carry his heavy burden to show that Friedman waived its right to arbitration. Accordingly, the trial court could not have denied Friedman's motion to compel arbitration on the basis of waiver.

## C. UNCONSCIONABILITY

We are left with Friedman's argument that the trial court could not have denied its motion to compel arbitration on the basis of unconscionability.

### 1. Evidence is Not Clear and Unmistakable That the Parties Intended Arbitrator to Determine Unconscionability

Friedman first asserts that the parties here agreed to have the issue of unconscionability determined by the arbitrator, not the trial court. Friedman asserts that the arbitration clause in the October 2013 contingency fee agreement

17

incorporated the JAMS rules and that those rules provide for the arbitrator to decide issues of arbitrability, including whether the arbitration agreement is unconscionable. Friedman argues that the incorporation of the JAMS rules within the arbitration clause evidences that the parties clearly and unmistakably intended to have the issue of unconscionability determined by the arbitrator. However, given the language of the arbitration provision at issue in this case, we cannot agree with Friedman.

Ordinarily, the trial court retains the power to rule on gateway issues such as the validity and enforceability of an arbitration agreement. *See Firstflight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 163 (Tex. App.—El Paso 2015, no pet.). It is well-settled, however, that parties can agree to delegate to the arbitrator the power to resolve gateway issues regarding the validity and enforceability of the arbitration agreement. *Id.* But such a delegation must be clear and unmistakable. *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018) ("A presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration.").

Friedman relies on several cases, including one from this court, to support his argument that the issue of unconscionability in this case is for the arbitrator. *See Dow Roofing Sys., LLC v. Great Comm'n Baptist Church*, No. 02-16-00395-CV, 2017 WL 3298264, at *3, *6 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.); *see also Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016); *Trafigura*

18

*Pte. Ltd. v. CNA Metals Ltd.*, 526 S.W.3d 612, 616 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  But each of these cases is distinguishable.

It is true that in the cases Friedman cites, the respective courts held that the parties had incorporated rules or statutes within the arbitration clauses and that those rules or statutes required issues of arbitrability to be submitted to the arbitrator.  *See WestEnd Capital*, 832 F.3d at 546; *Dow Roofing*, 2017 WL 3298264, at \*3, \*6; *Trafigura*, 526 S.W.3d at 616–19.  However, the applicable arbitration clauses in those cases had *expressly* incorporated the rules or statutes, leading the courts to conclude that the parties had clearly and unmistakably agreed to arbitrate arbitrability.  *See WestEnd Capital*, 832 F.3d at 546 (noting that the parties had "expressly adopted" the JAMS rules in their agreement, "present[ing] clear and unmistakable evidence that [they] agreed to arbitrate arbitrability" (internal quotation and citation omitted)); *Dow Roofing*, 2017 WL 3298264, at \*3, \*6 (noting that the arbitration clause expressly incorporated the AAA construction rules, demonstrating a clear and unmistakable delegation of arbitrability); *Trafigura*, 526 S.W.3d at 616–19 (holding that incorporation of United Kingdom's Arbitration Act of 1996 in combination with a broad arbitration agreement was clear and unmistakable evidence that the parties intended for the arbitrator to decide arbitrability).[9]

---

[9]Other cases Friedman cites hold similarly.  *See Emilio v. Sprint Spectrum L.P.*, 508 Fed. App'x 3, 5 (2d Cir. 2013) (holding parties clearly and unmistakably delegated questions of arbitrability to the arbitrator where the arbitration clause stated that "the

19

The arbitration agreement here, by contrast, does not expressly incorporate JAMS's rules; it merely states that the parties agreed that disputes falling within the scope of the arbitration provision would "be resolved by binding arbitration to be determined by Judicial Arbitration and Mediation Services, Inc. in Dallas, Texas." Thus, we find the cases Friedman relies upon to be distinguishable. Further, Friedman does not point us to any cases, nor have we found any, holding that language like that present in the arbitration provision here, which states that disputes would be determined by a particular arbitrator but does not expressly incorporate the arbitrator's rules, demonstrates a clear and unmistakable intent to have the arbitrator decide issues of arbitrability. And other than its argument that the parties incorporated the JAMS rules in the arbitration provision, an argument we reject, Friedman points us to no other evidence demonstrating a clear and unmistakable intent to submit issues of arbitrability to the arbitrator. Therefore, Friedman has not overcome the presumption favoring adjudication of arbitrability by the courts. *See Jody James Farms*, 547 S.W.3d at 631 ("A presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration.").

---

then-applicable rules of JAMS [would] apply"); *Wynn Resorts, Ltd. v. Atlantic-Pac. Capital, Inc.*, 497 Fed. App'x 740, 742 (9th Cir. 2012) (holding parties clearly and unmistakably intended to submit arbitrability to arbitrator where arbitration provision was broad and expressly incorporated JAMS rules).

## 2. Arbitration Provision is Not Unconscionable

Unconscionability may be either procedural or substantive in nature. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding). Procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision and relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process. *Id.*; *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (op. on reh'g). Substantive unconscionability concerns the fairness of the arbitration provision itself. *Halliburton Co.*, 80 S.W.3d at 571. A contract is substantively unconscionable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding) (quoting *In re FirstMerit Bank*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding)); *see Halliburton Co.*, 80 S.W.3d at 571.

In the trial court, Massey argued the arbitration agreement was substantively unconscionable for three reasons. First, he argued it was unconscionable for Friedman to move to compel arbitration "on the eve of mediation" after its case had been on file for more than three years. For several reasons, we are not persuaded that this establishes unconscionability. For starters, this is an argument about Friedman's conduct in invoking arbitration, not an argument that the arbitration clause is

21

substantively unconscionable. Additionally, substantive unconscionability is determined by examining the circumstances that existed when the parties made the contract, and Friedman's alleged delay in seeking arbitration has nothing to do with the circumstances that existed when Massey executed the October 2013 contingency fee agreement. *See Poly-Am.*, 262 S.W.3d at 348. Finally, as we noted above, Friedman did not unduly delay in seeking to compel arbitration; no arbitrable claims were asserted in this case until Massey filed his original counterclaim, and Friedman moved to compel arbitration of those counterclaims less than a month after Massey filed them.

The second argument Massey made in the trial court was that Friedman's motion to compel arbitration was an attempt to avoid discovery. But this argument suffers from the same deficiencies as his first argument and is thus unpersuasive.

The final argument Massey raised was that the arbitration agreement was unconscionable because it prevented him from conducting discovery. Massey conceded that it was ordinarily permissible for an arbitration agreement to limit discovery. The basis of Massey's complaint was that the bar on discovery was unconscionable because Friedman had already engaged in discovery and moved to compel arbitration in order to prevent Massey from doing the same.

Massey is correct that limits on discovery in arbitration provisions are quite typical, and where, as here, an arbitration clause limits both parties' right to conduct discovery, it is not unconscionable. *See In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d

22

692, 695 (Tex. 2008) (orig. proceeding). That leaves Massey's contention that the arbitration clause became unconscionable because Friedman engaged in discovery and then moved to compel arbitration to prevent him from doing the same. This contention is unpersuasive. First, Friedman's conducting of discovery after Massey executed the October 2013 contingency fee agreement has nothing to do with the circumstances that existed when Massey executed the contract, which are what matters when determining whether an arbitration provision is substantively unconscionable. *See Poly-Am.*, 262 S.W.3d at 348. Additionally, as we have already explained, the arbitration provision did not apply to claims unrelated to the October 2013 contingency fee agreement and thus did not bar Friedman or Massey from conducting discovery on claims that fell outside the scope of that agreement. Further, the only discovery Friedman served on Massey was a routine request for disclosure in connection with its suit seeking to recover fees for services that were unrelated to the October 2013 contingency fee agreement, and it served that request well before any affirmative claims within the purview of the arbitration clause had been asserted.

For all of these reasons, we conclude Massey failed to establish his defense that the arbitration agreement was unconscionable. Thus, the trial court could not have based its decision to deny Friedman's motion to compel arbitration on the basis of unconscionability.

In sum, we have concluded that the trial court's decision to deny Friedman's motion to compel arbitration is not supported by any theory asserted in the trial court.

23

*See Kehoe*, 526 S.W.3d at 791; *Shamrock*, 392 S.W.3d at 844. In the presence of an arbitration agreement, claims encompassed by that agreement, and the failure of the party resisting arbitration to prove any defense to enforcement, a trial court has no discretion but to compel arbitration. *See Brand FX*, 458 S.W.3d at 204. We conclude that Friedman presented a valid arbitration agreement, that the claims it sought to compel into arbitration fell within the scope of that agreement, and that Massey failed to prove any defense to enforcement. Accordingly, the trial court had no discretion but to compel arbitration, and it abused its discretion by not doing so. *See id.*

## IV. TEMPORARY INJUNCTION

The trial court also granted Massey's application for injunction and rendered a temporary injunction enjoining Friedman "from proceeding with arbitration in this matter unless, and until such time as, the Court compels arbitration." Friedman has appealed that order as well. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4).

We have concluded that the trial court had no choice but to compel arbitration of Massey's counterclaims. It necessarily follows that the trial court's temporary injunction enjoining Friedman from proceeding with arbitration was improper and must be set aside. *See Valero Energy Corp. v. Wager & Brown, II*, 777 S.W.2d 564, 567–68 (Tex. App.—El Paso 1989, writ denied) (holding that where arbitration of dispute was mandatory, the trial court's temporary injunction enjoining party from proceeding with arbitration of the dispute was improper and had to be set aside).

We sustain Friedman's sole issue.

24

## V.  CONCLUSION

Having sustained Friedman's sole issue, we (1) reverse the trial court's order granting the temporary injunction, (2) dissolve the temporary injunction, (3) reverse the trial court's order denying Friedman's motion to compel arbitration, and (4) remand to the trial court for entry of an order compelling to arbitration the counterclaims Massey asserted in the "Defendants' Original Counterclaim" he filed on August 7, 2018, pursuant to the parties' arbitration agreement.  *See* Tex. R. App. P. 43.2(d), 43.3(a); *Brand FX*, 458 S.W.3d at 206; *Valero*, 777 S.W.2d at 567–68.

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered:  July 18, 2019