**Opinion issued April 16, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00433-CV

———————————

**SK PLYMOUTH, LLC, SK E&P OPERATIONS AMERICA, LLC, AND JOEY JUN, Appellants**

**V.**

**JEAN ELIZABETH SIMMONS, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-03233**

---

## O P I N I O N

Jean Elizabeth Simmons sued Appellants—SK Plymouth, LLC; SK E&P Operations America, LLC ("SKEPOA"); and Joey Jun—for wrongful termination of employment. Based on an arbitration agreement signed by Simmons when she began employment with SKEPOA, Appellants filed a motion to compel arbitration

under the Federal Arbitration Act.[1] Simmons responded, asserting that the arbitration agreement was not enforceable because SKEPOA had not signed the agreement.

The trial court denied Appellants' motion to compel arbitration. The trial court also denied Appellants' motion to reconsider the motion to compel. In this interlocutory appeal, Appellants raise two issues. They challenge (1) the trial court's denial of their motion to compel arbitration and (2) the denial of their motion to reconsider.

Because the evidence from the motion to compel proceedings demonstrated that SKEPOA intended to be bound by the arbitration agreement, while no evidence showed that the parties intended for SKEPOA's signature to be a condition precedent to its enforcement, we hold that the trial court abused its discretion in denying the motion to compel arbitration. But we agree with Simmons that, in this interlocutory appeal, we have no jurisdiction to address the trial court's denial of the motion to reconsider.

We reverse the trial court's order denying Appellants' motion to compel arbitration and remand to the trial court. We dismiss the portion of the appeal challenging the order denying the motion to reconsider.

---

[1] *See* 9 U.S.C. §§ 1–16.

## Background

On May 2, 2018, Simmons received, and accepted, a written offer of employment for the position of senior production technician with "SK E&P Company." The offer informed Simmons that, "[a]s a condition for you to commence your employment with the Company, you are required to sign the Company's separate Confidentiality and Arbitration Agreement a copy of which is being provided to you along with this offer letter."[2]

Other documents in the record indicate that the senior production technician position accepted by Simmons was with SK Plymouth, not with SK E&P Company. On June 20, 2018, a letter from SKEPOA's president to Simmons indicated that SKEPOA intended to transfer some of SK Plymouth's operations to SKEPOA. The letter (hereafter "Transfer Letter") informed Simmons that her employment with SK Plymouth would be transferred to SKEPOA beginning July 1, 2018. The Transfer Letter also stated, "Except as set out in this letter, there will be no change to your existing terms and conditions of employment." The Transfer Letter requested Simmons to indicate whether she accepted the new position with SKEPOA by signing the letter. A copy of the Transfer Letter signed by Simmons is not part of the

---

[2] Appellants assert that Simmons signed an arbitration agreement at the time of her initial hire but could not find a signed copy of the agreement. The initial arbitration agreement is not the subject of Appellants' motion to compel arbitration at issue here. As discussed, *infra*, the subject arbitration agreement was signed by Simmons later in her employment in July 2018.

3

motion-to-compel record, however, other documents in the record indicate that Simmons's employment transferred to SKEPOA on July 1, 2018.

On July 12, 2018, Simmons signed an arbitration agreement, entitled Mutual Agreement to Arbitrate Claims ("the Arbitration Agreement"). The agreement provided, in relevant part, as follows:

> In consideration of the at-will employment relationship and its continuation between SK E&P Operations Americas (the "Company") and Jean Simmons ("Employee") and the mutual desire of the parties to enter in this Agreement, the Company and Employee hereby agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship, that are not resolved by their mutual agreement shall be resolved by final and binding arbitration by a neutral arbitrator. This Agreement includes any claims that the Company may have against Employee, or that Employee may have against the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities.
>
> . . . .
>
> The claims covered by this Agreement include, but are not limited to, claims for wrongful termination; . . . discrimination, harassment or retaliation, including but not limited to such conduct based on race, sex, pregnancy, religion, national origin, ancestry, age, . . . or any other protected category; [or] violation of . . . the Texas Labor Code.
>
> . . . .
>
> The Company reserves its right to amend or modify this Agreement at any time at its sole and absolute discretion provided that it gives Employee thirty (30) days' written notice. Notwithstanding any provision in this Agreement to the contrary, if the Company provides such notice, the Employee may reject such a change by sending written notice of the rejection to the Employee's immediate supervisor within 30 days of the issuance of the notice. By rejecting any such change, the

4

Employee will agree that the [a]rbitration agreement in effect with the Employee immediately before the proposed change, if any, will apply to that Employee.

The parties agree that there is good and valuable consideration for the execution of the Agreement, including but not limited to, Employee's continued employment with the Company, the requirement that the agreement to arbitrate all claims is mutual between the parties, and other good and valuable consideration.

. . . .

UNDER THIS ARBITRATION AGREEMENT THE PARTIES WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.

Simmons's signature, on the last page of the Arbitration Agreement, appears as follows:

**Acknowledgment of Receipt:**

Dated: 7·12 _____, 2018    By: _Jean Simmons_____
                                   EMPLOYEE

Dated: _____, 2018    COMPANY

                               By:

                               Its: _____

As reflected, a representative of SKEPOA did not sign the Arbitration Agreement.

Simmons's employment was terminated in October 2018. Three months later, Simmons filed suit against SK Plymouth, SKEPOA, and her supervisor, Joey Jun, for employment discrimination. In her petition, Simmons alleged that, prior to her termination, Jun had engaged in harassing and abusive conduct toward her.

5

Simmons averred that she had reported Jun's improper conduct to "Sandra Trover." Later-filed documents in the record show that the person's name is "Sandra Tovar," a human resource's representative. Simmons told Tovar that she believed Jun was mistreating her based on her gender, race, age, and national origin.

Simmons alleged that, in retaliation for reporting Jun's conduct to the human resources department, she was subjected to a hostile-work environment and ultimately terminated. Simmons claimed that Appellants' discriminatory and retaliatory employment practices violated Chapter 21 of the Texas Labor Code.

Appellants answered the suit, generally denying Simmons's claims but also asserting that the dispute was subject to arbitration. Appellants' counsel sent a letter to Simmons's counsel, requesting that Simmons dismiss her suit and submit her claims to arbitration pursuant to the Arbitration Agreement.

After Simmons did not comply with the request, Appellants filed a motion to compel arbitration and to stay the trial court proceedings. Appellants based the motion on the Arbitration Agreement signed by Simmons on July 12, 2018. Appellants asserted that the Arbitration Agreement was a valid, enforceable contract and that Simmons's claims were within the scope of the agreement.

In support of their motion to compel arbitration, Appellants submitted the Arbitration Agreement and other documents relating to Simmons's employment. The documents included the initial May 2, 2018 offer of employment signed and

accepted by Simmons. Appellants also submitted the June 20, 2018 Transfer Letter, notifying Simmons that her employment was being transferred from SK Plymouth to SKEPOA. Although the Transfer Letter requested Simmons to indicate her agreement to the employment transfer by signing the letter, the copy of the letter attached to the motion to compel arbitration was not signed by Simmons. However, Appellants offered other evidence indicating that Simmons's employment was transferred to SKEPOA in July 2018.

Among Appellants' evidence is Sandra Tovar's declaration. Tovar attested that she was a senior human resources specialist who had "worked for SK E&P Company or an affiliate since May 19, 2017." In that role, she oversaw "the hiring process of new employees," and she was "the custodian of the personnel documents that are sent, submitted to, and received by employees." Tovar attested that all the documents attached to the motion to compel were "true and correct" copies, including the Arbitration Agreement.

Tovar also stated that, [e]ffective July 1, 2018, [Simmons's] employment with SK Plymouth was transferred to SKE&P Operations America, LLC [SKEPOA]." Tovar attested that, when Simmons transferred to SKEPOA, she signed the Arbitration Agreement.

Responding to the motion to compel, Simmons asserted that the Arbitration Agreement was not a binding contract because it was not signed by SKEPOA. She

7

pointed out that the Arbitration Agreement contained a signature block for the company to sign. Simmons claimed that, because she was required to sign the Arbitration Agreement, SKEPOA was also required to sign it.

Appellants replied that SKEPOA's signature was not necessary to bind the company to the Arbitration Agreement. They pointed out that no language in the Arbitration Agreement required the parties to sign it. Appellants distinguished the cases relied on by Simmons, which involved arbitration agreements expressly requiring the parties to sign the instrument to make it binding. Appellants asserted that the Arbitration Agreement's signature block specified that its purpose was "Acknowledgment of Receipt," indicating that it functioned to provide confirmation that an employee, such as Simmons, had been notified of the agreement's terms.

Simmons replied, pointing out that the Transfer Letter—notifying Simmons that her employment was being transferred to SKEPOA—had requested her to sign the letter to indicate her agreement to the job transfer. Simmons questioned whether she had become SKEPOA's employee because Appellants did not submit a signed copy of the Transfer Letter. Simmons also offered her own declaration in which she indicated that she had become "generally confused" about which company had employed her because, at her "TWC [Texas Workforce Commission] hearing," "individuals that represented SK" could not identify who had employed Simmons.

Appellants offered payroll records indicating that SKEPOA was the company who paid Simmons. One record showed that SKEPOA paid Simmons in July 2018, the date she transferred to SKEPOA. Another record showed that SKEPOA paid Simmons in October 2018, the last month of her employment. In addition, Tovar attested in her declaration that, "[e]ffective July 1, 2018, [Simmons's] employment with SK Plymouth was transferred to SKE&P Operations America, LLC."

On May 16, 2019, the trial court signed an order denying the motion to compel arbitration without specifying the reason for the denial. Appellants timely appealed the order, filing their notice of appeal on June 10, 2019.[3]

On June 18, 2019, Appellants filed a motion to reconsider the motion to compel arbitration. Appellants asserted that a copy of the Transfer Letter signed by Simmons—indicating that she had agreed to the employment transfer from SK Plymouth to SKEPOA—had only recently been discovered in company personnel records. Appellants attached a copy of the signed letter to the motion to reconsider.

On July 22, 2019, the trial court signed an order denying the motion to reconsider. Appellants appealed the order, filing a separate notice of appeal on July 30, 2019. The appeal of the order denying the motion to compel arbitration and the

---

[3] Appellants were granted an extension of time to file their notice of appeal. *See* TEX. R. APP. P. 26.1(b), 26.3

appeal of the order denying the motion to reconsider are included in the instant appeal.

Appellants raise two issues on appeal. In their first issue, Appellants contend that the trial court erred when it denied their motion to compel arbitration. In their second issue, Appellants challenge the trial court's denial of their motion to reconsider.

Simmons has filed a motion to dismiss the portion of the appeal challenging the trial court's denial of the motion to reconsider. She argues that this Court lacks jurisdiction to consider the appeal of that order because it is not a statutorily designated order subject to interlocutory appeal. Because it is a threshold issue, we first address Simmons's motion to dismiss.

**Motion to Dismiss**

Interlocutory orders may be appealed only if permitted by statute and only to the extent jurisdiction is conferred by statute. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding). We strictly construe statutes authorizing interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011).

In Texas, parties may expressly agree to arbitrate under the FAA. *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). Here, the Arbitration Agreement

provides that it is "enforceable under and subject to the Federal Arbitration Act [FAA]." Appellants' arbitration motion indicates that they seek to compel arbitration under the FAA. Although she opposes arbitration, Simmons does not contest the application of the FAA.

Section 51.016 of the Civil Practice and Remedies Code, which authorizes appeals in matters subject to the FAA, provides that a party may appeal an interlocutory order "under the same circumstances that an appeal from a federal district court's order or decision would be permitted" by the FAA. TEX. CIV. PRAC. & REM. CODE § 51.016. Under the FAA, a party may immediately appeal an order denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(B). Therefore, an interlocutory appeal may be taken from an order denying a motion to compel arbitration under the FAA. However, there is no statutory authority permitting the interlocutory appeal of an order denying a motion to reconsider the denial of a motion to compel arbitration. *See Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 201 (Tex. App.—Fort Worth 2015, no pet.).

Appellants indicated that they filed the motion to reconsider for the purpose of offering additional evidence—specifically, the copy of the Transfer Letter signed by Simmons—in order to rebut a point raised by Simmons in her response to the motion to compel. In doing so, Appellants raised no new grounds to compel arbitration. *See id.* (concluding no interlocutory appeal authorized from motion to

11

reconsider because arguments included in motion to reconsider were already raised at previous hearing on motion to compel arbitration); *Nazareth Hall Nursing Ctr. v. Castro*, 374 S.W.3d 590, 594 (Tex. App.—El Paso 2012, no pet.) (concluding interlocutory appeal from denial of motion to reconsider not authorized under FAA because motion to reconsider was based on same arbitration agreement that was subject of motion to compel); *cf. Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 12 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding court had jurisdiction over interlocutory appeal of denial of third motion to compel arbitration when new issue was argued by parties in motion and at hearing on motion, making third motion distinct motion to compel arbitration and not motion for reconsideration of second motion to compel arbitration); *Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 349 (Tex. App.—El Paso 2012, no pet.) (holding interlocutory appeal from amended motion to compel was authorized under FAA because amended motion to compel was based on separate and different arbitration agreement than agreement relied on in original motion to compel; thus, amended motion was not a disguised motion to reconsider).

Because Appellants' motion to reconsider requested the same relief based on the same Arbitration Agreement as in the motion to compel, and it raised no new distinct arguments for compelling arbitration, we conclude that we have no jurisdiction to consider Appellants' challenge to the order denying Appellants'

12

motion to reconsider raised in their second issue. *See Brand FX, LLC*, 458 S.W.3d at 201; *Nazareth Hall Nursing Ctr.*, 374 S.W.3d at 594. Accordingly, we grant Simmons's motion to dismiss the portion of the appeal challenging the order denying the motion to reconsider.[4]

## Motion to Compel Arbitration

In their first issue, Appellants contend that the trial court erred when it denied their motion to compel arbitration and to stay the trial court proceedings pending arbitration.

### A. Standard of Review and Applicable Legal Principles

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115.

---

[4] We agree with Simmons that we cannot consider the evidence attached to Appellants' motion to reconsider or Simmons's evidence submitted in response to the motion. *See Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 201 (Tex. App.—Fort Worth 2015, no pet.).

A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration agreement and (2) the claims in dispute fall within that agreement's scope. *In re Rubiola*, 334 S.W.3d at 223. Here, the dispute is not whether Simmons's claims fall within the scope of the agreement;[5] rather, the dispute is whether Appellants met their burden to show that the Arbitration Agreement is a valid, enforceable agreement.

The trial court's determination as to the validity of an arbitration agreement is a legal determination that we review de novo. *See Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). While there is a strong policy favoring arbitration, this policy does not apply to the initial determination whether there is a valid arbitration agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). The presumption favoring arbitration arises only after the party seeking to compel arbitration establishes a valid agreement to arbitrate because "the purpose of the

---

[5]     The Arbitration Agreement provides that it applies to "any claims that the Company may have against Employee, or that Employee may have against the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities." This includes "claims for wrongful termination; . . . discrimination, harassment or retaliation, including but not limited to such conduct based on race, sex, pregnancy, religion, national origin, ancestry, age, . . . or any other protected category; [or] violation of . . . the Texas Labor Code." Thus, Simmons's wrongful termination suit against Appellants, arising from allegations that they retaliated and discriminated against her based on her gender, race, age, and national origin in violation for of Chapter 21 of the Texas Labor Code, fall within the scope of the Arbitration Agreement.

14

FAA is to make arbitration agreements as enforceable as other contracts, not more so." *Id.* at 738 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 354 n.4 (5th Cir. 2003)).

## B.     Validity of Arbitration Agreement

To determine whether the Arbitration Agreement constitutes a valid agreement to arbitrate, we apply ordinary principles of state contract law. *See id.* The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Here, the dispute centers on the fifth element. As framed by the parties, the validity of the Arbitration Agreement hinges on whether SKEPOA assented to be bound by the agreement's terms even though it did not sign the agreement. As shown above, the last page of Arbitration Agreement contained signature blocks for both the employee and the company to sign under the heading "Acknowledgment of Receipt." Simmons signed on the line designated for the employee, but SKEPOA did not sign on the line designated for the company. Because SKEPOA did not sign the agreement, Simmons asserts that the Arbitration Agreement is not binding.

15

"Contracts require mutual assent to be enforceable." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). "Typically, a party manifests its assent by signing an agreement." *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013). However, "while signature and delivery are often evidence of the mutual assent required for a contract, they are not essential." *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015).

The Supreme Court of Texas has held that the FAA does not require parties to sign an arbitration agreement for it to be valid "so long as [the agreement is] written and agreed to by the parties." *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009); *see In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005). In *Polymerica*, the court made clear that it has "never held that [an] employer must sign the arbitration agreement before it may insist on arbitrating a dispute with its employee." 296 S.W.3d at 76; *see Brock Servs., LLC v. Montelongo*, No. 01-18-00923-CV, 2019 WL 3720624, at *4 (Tex. App.—Houston [1st Dist.] Aug. 8, 2019, no pet.) (mem. op.) (recognizing that "[t]he FAA does not require parties to sign an arbitration agreement" and holding that arbitration agreement could be enforced against employee even when employer did not sign it).

Although an employer is not required to sign an arbitration agreement to make it enforceable, "parties to an arbitration agreement may express their intent to require a signature as a condition precedent to the agreement's enforceability." *Wright v.*

16

*Hernandez*, 469 S.W.3d 744, 758 (Tex. App.—El Paso 2015, no pet.). Under principles of Texas contract law, a party's failure to sign an agreement will render it unenforceable when the terms of the contract make it clear that the party's signature is required to make it binding. *See Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) ("Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent."); *see also Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418–19 (Tex. 1955) (determining that evidence did not support jury's verdict enforcing contract because (1) one party had not signed agreement; (2) contract contained a signature block; (3) contract itself stated that parties' signatures had to be notarized, and (4) contract was given to one of the parties with directions to sign it and return to other party for signing); *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 215 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that modification to contract was not effective when modified contract not signed by one party because, inter alia, contract required modifications to be signed by both parties).

In the context of employer-employee arbitration agreements, courts have held that, when the express language of the agreement required the parties' signatures either to make the arbitration agreement binding or to modify the agreement, an employer must sign an arbitration agreement for it to be a valid, enforceable contract.

17

*See Hi Tech Luxury Imports, LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.) (mem. op.) (upholding trial court's denial of motion to compel arbitration when agreement's language "provide[d] unambiguous evidence of the parties' intent to require both signatures as a condition precedent to enforcement of the agreement," including language above signature lines that parties attested that they had read, understood, and agreed "to be legally bound to all of the above terms"); *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 690–91 (5th Cir. 2018) (concluding no valid agreement to arbitrate because employer did not sign arbitration agreement, and "[t]he agreement . . . contain[ed] language that the parties needed to sign the agreement to give it effect or to modify it"; specifically, contract stated that, "[b]y signing this agreement the parties are giving up any right they may have to sue each other" and contained clause prohibiting modifications unless they were "in writing and signed by all parties"); *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 211 (Tex. App.—El Paso 2004, orig. proceeding) (denying mandamus relief to employer after trial court denied its motion to compel arbitration because there was "conflicting evidence" regarding whether parties intended employer to sign agreement before it became effective, including evidence showing that parties' agreement contained signature block intended for employer's signature, and agreement stated, "No modification or amendment of any

18

provision of this Agreement is effective unless it is in writing and signed by the parties to this Agreement").

Other than the blank signature block, no language in the Arbitration Agreement indicates that SKEPOA's signature was contemplated as a condition precedent to the agreement's enforceability. We agree with other courts that a blank signature block alone does not establish that a signature is a condition precedent to the agreement's enforceability. *See Wright*, 469 S.W.3d at 760 (citing *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 454–55 (5th Cir. 2013) (recognizing that blank signature line alone is not necessarily proof that parties required formal signatures for contract to be binding). We also note that, in contrast to the language accompanying the signature line in *Hi Tech Luxury Imports*—stating that the parties were attesting that they had read, understood, and agreed "to be legally bound to all of the above terms" in the agreement—the language preceding the signature lines in the Arbitration Agreement here states that parties' signatures constituted an "Acknowledgement of Receipt." *See* 2019 WL 1908171, at *2.

Simmons relies on the decisions in *Huckaba* and *Bunzl* to support her position that SKEPOA was required to sign the Arbitration Agreement. However, unlike the arbitration agreements in *Huckaba* and *Bunzl*, here, the Arbitration Agreement does not contain any provision expressly requiring the agreement to be signed by the parties in order to make it binding or to modify it. The agreement provides that the

19

process to modify its provisions must be in writing, but in contrast to the agreements in *Bunzl* and *Huckaba*, the modifications are not required to be signed by the parties.

To show that the parties had agreed SKEPOA's signature was required, Simmons points to the initial May 2, 2018 employment offer, which she signed and accepted. The May 2 offer contained language stating that, "[a]s a condition for [her] to commence [her] employment with the Company," Simmons was "required to sign the Company's separate Confidentiality and Arbitration Agreement." The June 20, 2018 Transfer Letter, notifying Simmons that her employment was being transferred from SK Plymouth to SKEPOA, stated, "Except as set out in this letter, there will be no change to your existing terms and conditions of employment." Simmons asserts that these letters show that, even when her employment was transferred to SKEPOA, the condition that she sign an arbitration agreement remained. However, a requirement that Simmons sign the Arbitration Agreement in order to demonstrate her "Acknowledgement of Receipt" of the agreement as a condition of her employment does not indicate an intent by the parties to require SKEPOA to sign the agreement to show its assent. Rather, it evinces SKEPOA's desire to ensure that it could demonstrate that Simmons had received notice of the agreement. *See In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162–63 (Tex. 2006) (stating that "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's

20

arbitration policy and accepted it," and holding that employee's signed acknowledgement of receipt of arbitration plan gave employee notice of arbitration agreement).

Simmons also cites a separate "invention agreement" that she signed on the same day she that signed the Arbitration Agreement. She points to a clause in the invention agreement, providing that "[a]ny and all disputes arising out of or under this Agreement are subject to arbitration pursuant to the separately executed Mutual Arbitration Agreement between the Company and me." However, as discussed, a contract need not be signed to be "executed" unless the parties explicitly require signatures as condition of mutual assent. *See Mid–Continent Cas. Co.*, 323 S.W.3d at 157.

Based on the record, there is insufficient evidence to conclude that SKEPOA's signature was a condition precedent to the enforceability of the Arbitration Agreement. *See Wright*, 469 S.W.3d at 760. Nonetheless, Appellants were still required to show that SKEPOA assented to the terms of the Arbitration Agreement. *See id.* at 758. Even when there is no evidence to show that the parties intended the signing of the agreement to be a condition precedent, the evidence must still demonstrate that the non-signatory party intended to be bound by the agreement. *See id.*

Here, SKEPOA offered evidence, including the Arbitration Agreement, to show that it assented to the agreement's terms. The Arbitration Agreement indicates that the parties have a "mutual desire" to enter into the agreement, and the agreement makes clear that it applies to claims asserted by either party.

Mutuality of the parties' assent is highlighted by the language in the agreement's provision governing modification:

> The Company reserves its right to amend or modify this Agreement at any time at its sole and absolute discretion provided that it gives Employee thirty (30) days' written notice. Notwithstanding any provision in this Agreement to the contrary, if the Company provides such notice, the Employee may reject such a change by sending written notice of the rejection to the Employee's immediate supervisor within 30 days of the issuance of the notice. By rejecting any such change, the Employee will agree that the [a]rbitration agreement in effect with the Employee immediately before the proposed change, if any, will apply to that Employee.

The modification provision shows the parties' intent for each to be bound by the agreement without the necessity of signatures. The language indicates that, when the company provided her with "written notice" of a modification, Simmons could reject the modification by providing the company with her own written notice, no signatures required. Once Simmons sent a rejection notice, the parties would continue to be mutually bound to the original contract terms. The provision illustrates the intended parity of the parties' ability to bind one another to the arbitration agreement as originally drafted, or as modified, without a signed writing.

In the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of an agreement. *Bunzl*, 155 S.W.3d at 209. A party's "intent to be bound by a contract may be evidenced by its conduct at the time a contract is drafted and by its subsequent conduct reflecting that it was acting in accordance with the terms of the contract." *Wright*, 469 S.W.3d at 760; *see Thomas J. Sibley, P.C. v. Brentwood Inv. Dev. Co., L.P.*, 356 S.W.3d 659, 663 (Tex. App.—El Paso 2011, pet. denied) ("A party may accept a contract and indicate its intent to be bound to the terms by acts and conduct in accordance with the terms.").

When "determining whether an employer intended to be bound by an arbitration agreement in the absence of the employer's signature on the agreement, courts have considered various actions taken by the employer." *Wright*, 469 S.W.3d at 761. These actions have included "the employer's act of drafting the arbitration agreement, its actions in maintaining the agreement as a business record, and its actions in moving to enforce the agreement when the employee filed suit against it." *Id.* (citing *Dish Network L.L.C. v. Brenner*, No. 13–12–00564–CV, 2013 WL 3326640, at *5 (Tex. App.—Corpus Christi 2013, no pet.) (mem. op.) (reversing trial court's order denying motion to compel arbitration when undisputed evidence established that employer intended to be bound by unsigned agreement based, in part, on fact that employer drafted agreement and required all of its employees to sign agreement prior to working at the company); *In re Brown & Root, Inc.*, No. 05–

23

98–00689–CV, 1998 WL 325692, at \*2 (Tex. App.—Dallas June 18, 1998, orig. proceeding) (not designated for publication) (holding employer who failed to sign arbitration agreement evidenced its intent to be bound by agreement by, among other things, drafting the arbitration agreement and seeking arbitration).

In *Bunzl*, the court determined that the affidavit of the employer's human resource manager, in which she attested that (1) the arbitration agreement was a true and correct copy of the agreement signed by the employee, (2) the agreement was kept by the employer as a business record, and (3) she had reviewed the agreement to ensure that the employee was terminated in accordance with the agreement, constituted "some evidence" that the employer had intended to be bound by the agreement even though it had not signed it. *Bunzl*, 155 S.W.3d at 211. However, the *Bunzl* court also found that there was "conflicting evidence" indicating that the parties did not intend to be bound by the agreement until both parties signed it. *Id.* Specifically, as "conflicting evidence," the court cited that provision in the agreement requiring all contract modifications to be signed by both parties and the blank signature block for the employer. *Id.* Because of the "conflicting evidence," the *Bunzl* court determined that the arbitration agreement was not enforceable in the absence of the employer's signature. *See id.* at 212.

In contrast to *Bunzl*, the trial court here was not presented with an arbitration agreement expressly requiring signatures to modify it or to make it binding. Instead,

24

as discussed, language in the Arbitration Agreement indicates that the parties intended to be mutually bound by the agreement without signing it.

Appellants also presented other evidence that further established SKEPOA intended to be bound by the Arbitration Agreement. The declaration of human resources specialist, Sandra Tovar, indicates that the Arbitration Agreement was a business record maintained by the company in its employees' personnel files. Tovar attested that she was the custodian of "the personnel documents that are sent, submitted to, and received by employees." Attached to Tovar's declaration were documents related to Simmons's employment. This included the Arbitration Agreement, which Tovar attested was "a true and correct copy" of the agreement.

Tovar's declaration and the attached employment documents, showing that the Arbitration Agreement was given to Simmons for her signature, provide an indication that SKEPOA prepared the Arbitration Agreement. The language selected for the agreement required "the parties" to waive their right to have disputes decided by a court and made clear that the agreement applied to claims brought either by Simmons or by SKEPOA.

The record also shows that SKEPOA relied on the Arbitration Agreement and took steps to enforce it. Through its counsel, SKEPOA sent a letter to Simmons's attorney, notifying her that her claims were subject to the Arbitration Agreement. The letter requested Simmons to dismiss her suit so the parties could pursue

25

arbitration as required by the agreement. SKEPOA also asserted arbitration as a defense in its answer, and, along with SK Plymouth and Jun, sought to enforce the Arbitration Agreement by filing the motion to compel arbitration.

Simmons responded to Appellants' evidence by asserting that she "dispute[d] that she was ever an employee of the Company and, thus, the arbitration agreement between [her] and . . . E&P Operations America, LLC (the 'Company') is of no value." Simmons pointed out that the copy of the Transfer Letter offered by Appellants was not signed by her and thus did not show that she had agreed to have her employment transferred to SKEPOA. She also offered her own declaration in which she indicated that she had become "generally confused" about which company had employed her because, at her post-termination "TWC hearing," "individuals that represented SK" could not identify who had employed Simmons.

However, in addition to the Transfer Letter, Appellants offered other evidence to show that Simmons was employed by SKEPOA on July 12, 2018, when she signed the Arbitration Agreement. Tovar attested in her declaration that Simmons's employment was transferred to SKEPOA on July 1, 2018. And Appellants offered records showing that Simmons was on SKEPOA's payroll in July 2018 and in October 2018 when her employment was terminated. Neither the unsigned Transfer Letter nor Simmons's declaration that she became "generally confused" about the identity of her employer at her TWC hearing negate the evidence establishing that

she was employed by SKEPOA or raise a fact issue regarding whether SKEPOA assented to the Arbitration Agreement.[6]

We conclude that Appellants' evidence, offered in support of their motion to compel arbitration, established that SKEPOA assented to the Arbitration Agreement and intended to be bound by it, but no evidence showed that SKEPOA's signature was a condition precedent to its enforceability. *See Wright*, 469 S.W.3d at 761; *Dish Network*, 2013 WL 3326640, at *5. Appellants met their burden to establish the

---

[6]    For the first time on appeal, Simmons questions the validity of the Arbitration Agreement by pointing out a discrepancy in the spelling of SK E&P Operations America, LLC's name in the agreement. The evidence, including Tovar's declaration and the payroll records, indicate that Simmons was employed by SK E&P Operations America, LLC at the time she signed the Arbitration Agreement, but the opening paragraph of the agreement states the name of the company as "SK E&P Operations Americas." Simmons points out that there is an added "s" at the end of "America" and the "LLC" is missing. Simmons asserts that other documents in the record suggest that the corporate name stated in the agreement belongs to another corporate entity apart from SK E&P Operations America, LLC. However, there appeared to be no confusion during the trial court proceedings that the Arbitration Agreement was between Simmons and SK E&P Operations America, LLC. In any event, because it was not raised in trial court, we do not address this ground for affirming the trial court's order denying the motion to compel arbitration. *See Ridge Nat. Resources, L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.) ("The scope of this Court's review of the trial court's decision is constrained by the arguments raised by the parties both in the trial court and on appeal. . . . Because the trial court would err if it denied a motion to compel arbitration on a ground not raised by the resisting party, we may affirm the trial court's refusal to compel arbitration only if one of the grounds presented by the resisting party is valid."); *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 102 (Tex. App.—San Antonio 2016, no pet.) (stating that reviewing court will uphold ruling if there is sufficient basis under any legal theory asserted in trial court).

existence of a valid arbitration agreement as a matter of law. We hold that the trial court abused its discretion by denying Appellants' motion to compel arbitration.

We sustain Appellants' first issue.

## Conclusion

We reverse the trial court's order denying Appellants' motion to compel arbitration. We remand for the trial court to sign an order (1) compelling the parties to arbitrate Simmons's claims and (2) staying the proceedings pending completion of the arbitration. We dismiss the portion of the appeal challenging the order denying Appellants' motion to reconsider.

Richard Hightower
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.